SPENCE, for use, etc., *v.* CONEY, LOVEJOY & COMPANY.

Where a distress warrant was levied upon personal property and a claim was filed by a third person, who gave a forthcoming bond in terms of the statute, an action against the principal and sureties thereon was, after the property had been found subject to the warrant, maintainable without a readvertisement of the property for sale, and without proving that any personal demand therefor had, before suit, been made upon the defendants, it affirmatively appearing that it would have been physically impossible for them to produce the property in response to any such advertisement or demand.

October 21, 1895.

Action on bond. Before Judge Smith. Pulaski superior court. February term, 1895.

*W. L. & Warren Grice*, for plaintiff.
*T. C. Taylor*, for defendants.

LUMPKIN, Justice.

A distress warrant in favor of Mrs. Davis against one Mercer was levied on certain personalty, which was

claimed by Laidler, who gave a forthcoming bond for the delivery of the property at the time and place of sale, provided it should be found subject to the distress warrant. It was subsequently found subject; and, without advertising it for sale, or demanding of the claimant or his sureties a surrender of its possession, the constable brought an action against them upon the forthcoming bond. On the trial, it appeared from the defendants' own testimony that none of them had possession or control of the property, and that they could not possibly have produced it if it had been demanded of them by the officer. The court granted a nonsuit on the ground that it had not been shown that the defendants had used or carried off the property, or that a demand had been made upon them for the same. This, we think, was error.

It has been frequently decided that an advertisement of property for which a forthcoming bond has been given is unnecessary, when such property has been consumed, or otherwise disposed of, so as to render it impossible for the obligors in the bond to deliver the same to the levying officer on demand. *Lassiter* v. *Byrd & Coker*, 55 *Ga.* 606; *Bowen* v. *Penny*, 76 *Ga.* 743; *Anderson* v. *Banks et al.*, 92 *Ga.* 121. These cases proceed upon the idea that where an obligor has voluntarily placed himself in a situation which renders it impossible for him to comply with the obligation he has assumed, he is to be treated as abandoning and renouncing his contract, and consequently, committing a breach thereof. Such, unquestionably, is the true law on the subject. "As the renunciation of a contract before performance is due is equivalent to a breach, and entitles the injured party to sue immediately, so if one party by his own act makes performance of his promise impossible, the other may at once bring an action against him for a breach." 3 Am. & Eng. Enc. of Law, 907. It is a mistake to suppose that a breach of a written obligation can result only after the time for performance

therein stated has arrived, and due demand for performance has been made and refused. "A party to a contract may break it in one of three ways: (a) by renouncing his liabilities under it; (b) by rendering performance of his promise impossible; (c) by totally or partially failing to perform what he has undertaken." 3 Am. & Eng. Enc. of Law, 903, 904. Even where the contract stipulates that performance is not due until a certain time, or the happening of a certain event, if a party voluntarily abandons his contract before demand for performance can be made upon him, by putting it beyond his power to comply when demand shall be made, a breach results *instanter*. "When impossibility of performance is caused by the act of one of the parties, it is equivalent to a breach." See, again, page 903, above cited. Clearly, therefore, if such a breach can be shown, it follows that there has been a violation of the contract rendering the obligor liable to the party with whom he contracted; and it is utterly immaterial whether the latter did, or did not, subsequently demand the performance of a contract which had already been broken by the obligor as completely as it well could be.

In the present case, it does not appear what actually became of the property levied on and replevied; but we are unable to perceive what material difference this can make, when the defendants expressly admitted that it was not within their power to produce it, and thus conceded that if a demand for it had been made by the officer, the same would have been fruitless. The physical impossibility to produce is the important fact, and not the causes which brought this impossibility about, unless the inability on the part of the defendants arose through no fault on their part. As to this, they offer no excuse or defense. They merely insist that there has been no breach of their bond, because the surrender of the property was never demanded of them by the levying officer.

If there had been an advertisement, this would have been the legal equivalent of a demand, and a failure to produce the property at the time and place of sale would have constituted a breach of the bond. As has been seen, however, it has been definitely ruled that there is no occasion for advertising when it is absolutely certain that the property cannot be produced. As demand was not made by advertisement, were the defendants entitled to a personal demand upon them before it could be said their contract was broken? Under the admitted facts, we think not. Their contract, in effect, bound them to have the property in readiness for delivery when called for by advertisement or by personal demand. Their obligation to produce the property at the time and place of sale comprehended an incidental duty to safely keep the property in order that they would be in a situation to surrender it promptly upon proper demand made on them. They could not arbitrarily abandon their keeping and possession of the property without at the same time renouncing their obligation to hold it subject to demand by the officer. It would be absurd to say that a claimant who had replevied a horse might wilfully turn the animal loose in the highway and allow it to escape, and still insist that he had done nothing inconsistent with his duty under the forthcoming bond he had given, or evinced by his conduct a purpose to renounce and abandon his contract. If the defendants, by their own negligent or wilful conduct, brought about a state of facts which would render a demand on them utterly futile, they cannot shield themselves behind the technical objection that no such demand was in fact made. Their voluntary relinquishment of all control over the property is to be treated as a renunciation of their obligation under their bond to hold the property subject to demand. Thereafter a demand would avail them nothing; it would be entirely unnecessary to their protection, as enabling them to meet the requirements of their bond by making surrender of the

property when called for. The policy of the law is not to insist upon mere futile and fruitless formalities. Under such circumstances, the defendants will be held to have waived demand, by voluntarily abandoning their contract and committing a breach of its obligation. The same reason for dispensing with an advertisement in such cases would also dispense with any legal necessity for a personal demand. It is true that in some of the cases bearing on this subject it appears that a personal demand was made; but, in those cases, impossibility of compliance with a demand did not appear.                *Judgment reversed.*