# BEACHAM v. WRIGHTSVILLE AND TENNILLE RAILROAD COMPANY.

1. Where the defendant was in possession of a tract of land, the title to which was in dispute between himself and the plaintiff, it was error for the court to finally decree, before the question of title was adjudicated, that the defendant be permanently enjoined "from interfering with or interrupting the plaintiff, . . in the . . enjoyment of the use and possession of the premises, . . with the right [of the plaintiff] to remove obstructions now or hereafter placed on said premises by the defendant."

2. Upon the trial of the case the court did not err in refusing to allow an amendment to the answer, when the same set up new matter of defense, notice of which was not given in the original answer, and the defendant failed to swear, in the affidavit attached to the proposed amendment, that such new matter was not omitted from the original answer for the purpose of delay.

Argued February 21,—Decided May 14, 1906.

Equitable petition. Before Judge Lewis. Laurens superior court. January 28, 1905.

The Wrightsville and Tennille Railroad Company, hereinafter called the Wrightsville Company, brought an action against L. C. Beacham. The substance of the petition was: The Dublin and Wrightsville Railroad Company (hereafter called the Dublin Company) was a domestic corporation, chartered in 1885. In February or March, 1886, the Dublin Company contracted with the firm of Beacham & Holmes, composed of defendant and C. L. Holmes, to locate a station on its line of road at Condor in Laurens county, upon land owned by Beacham & Holmes, in consideration of a conveyance by them to that company of a described parcel of land containing two acres, and the erection by Beacham & Holmes thereon of a building, to be completed by January 1, 1886, of given dimensions and description, to be used as a depot. The station was located and the building erected in accordance with such agreement. A deed conveying the two acres of land to the Dublin Company by Beacham & Holmes was prepared at the instance of such company and delivered to Beacham & Holmes for execution, but was never executed by them. On December 1, 1886, the Dublin Company "was merged into the Wrightsville & Tennille Railroad Company by the consolidation of the two corporations, and . . petitioner . . thereafter became and was seized and possessed of all rights, titles, and interest of the Dublin & Wrightsville Railroad Company in and to the premises heretofore described." Immediately upon the completion of the depot building, the Dublin Company went into possession of the same, and this company and the Wrightsville Company have been using the building for depot purposes continuously since its completion. By reason of the contract between the Dublin Company and Beacham & Holmes and the consolidation of that company with the Wrightsville Company, the latter company became the owner of the two acres of land in question and the building erected thereon, and the Dublin Company and its successor, the Wrightsville Company, have been in the actual and adverse possession of the premises since the spring or summer of 1886. At the time of the transactions heretofore mentioned between the Dublin Company and Beacham & Holmes, Beacham was a director of the Dublin Company, and participated in such transactions, and was such director at the time of the consolidation of the Dublin Company and the Wrightsville Company, and participated in such con-

solidation. Subsequently to the making of this contract between the Dublin Company and Beacham & Holmes and the erection of the depot, Beacham acquired the interest of Holmes in and to the lands adjacent to the two acres in question and to the two-acre tract also, but he had knowledge, at the time, that the Wrightsville Company was in possession of the two acres, claiming title thereto. About March 16, 1904, Beacham "entered upon said two-acre tract of land, cast your petitioner out of possession thereof, and erected a fence around the same and along the right of way of the petitioner," at about the distance of fifteen feet from the depot on the east, west, and south sides thereof, "in such a manner as to deprive petitioner, its patrons, and the public from the full and free use and enjoyment of the said premises for depot and station privileges," it being impossible, by reason of said fence, for the depot and side-track to be approached with teams drawing heavy timber, lumber, and other articles for shipment, thereby causing irreparable damages to the petitioner and annoyance and inconvenience to its patrons and the public. The petition further alleged, that the removal of the fence was necessary for the operation and protection of petitioner's business, and for the public good and convenience; and that Beacham, by erecting the fence, had injured and damaged petitioner in the sum of $500 or other large sum. The prayers were, (1) for injunction restraining Beacham "from further interfering with petitioner in the use and possession of said premises, and prohibiting him from opposing the removal of said obstructions, and requiring him to restore possession of said premises to petitioner until the further order of the court; (2) that said Beacham be compelled to execute and deliver to petitioner a deed to said premises; (3) for reasonable damages suffered by petitioner by reason of the facts above recited, in the sum of $500 or other large sum," and (4) for general relief. The petition was properly verified.

The defendant, in a sworn answer, admitted that he was a director of the Dublin Company at the time it negotiated with Beacham & Holmes for the two acres of land, the building of a depot, and the establishment of a station at Condor, but alleged that "the authorities of said railroad first negotiated with . . . defendant for the location of the depot on the lands of Beacham & Holmes immediately on the public road, and the contract recited

in plaintiff's petition was for two acres of land and a depot build-
ing immediately at that point. . . Afterwards and during the
construction of said railroad, and before anything more was said
or done and before the contract was entered into, the said railroad
company through its officers came to the conclusion that, owing to
an embankment [that] was necessary to be thrown up at this par-
ticular point to make the proper grade in said road, it was necessary
to move said depot site westward, from said point agreed upon, the
distance of 800 feet, and thereupon another and different agree-
ment was . . made and entered into between . . defendant
and the authorized agent of said plaintiff, to wit: that on account
of removing or establishing a depot and giving the two acres of
land the distance aforesaid from said road up into defendant's
land, that it was worth more to the railroad and less to ..  . de-
fendant, not only by reason of the inconvenience to get to, but on
account of the fact of cutting out of two acres of the tract of land
of . . defendant; the price agreed to be paid on the part of
plaintiff's officers was to be the cost of erecting or building the dam
or grade at the first-named place, which was at that time not con-
structed or built. . . After the same was built it cost the sum
of $150, and this being the amount agreed upon by both parties, it
then became the amount which plaintiff was to pay . . de-
fendant for the privileges asked for in its petition." So much of
the petition as was contrary to these allegations was denied by de-
fendant. Defendant further denied that the Dublin Company, or
its successor, the plaintiff, ever became the owner of the two acres
in question, and that they had been in the adverse possession of the
same as set out in the petition; but alleged that he built the depot
on an uninclosed tract of land of about ten acres, "which has been
standing more or less in an open condition, the same being unin-
closed, from the time of the erection of said building" to within
a few months prior to the filing of his answer. He also denied
that the Dublin Company had tendered him a deed to be executed
by him, conveying to that company the two acres in question. He
admitted erecting a fence enclosing the land in dispute; but alleged
that no one was in possession of the same at the time, that he owned
it, and that he left ample room between the fence and the depot for
loading and unloading freight and for the convenience of the plain-
tiff's patrons; and he denied that plaintiff would suffer irreparable

damage by reason of the erection of the fence, or any damage at all, and also denied that the removal of the fence was necessary for the operation and protection of the plaintiff's business and for the public good and convenience. He further alleged, that the plaintiff was indebted to him $150, with about nineteen years interest thereon, as the purchase-price of the land in question, and that upon the payment of the same he was ready to make plaintiff a deed to the land; that many times since the depot was built he had requested the officers of the plaintiff company to pay him the money due for the land, at the same time offering to convey it to the company upon payment of such money; that they postponed the matter, promising him that they would take it up soon and adjust and settle it, and never denying or disputing defendant's right to such money until recently, and that upon their final refusal to pay him he enclosed the land with a fence.

At the trial, the defendant offered the following amendment to his answer: "1. For further plea and answer defendant says that he did not agree and contract to give the deed to the land as described in plaintiff's petition. (2) That the present plaintiff is not an innocent purchaser of the former corporation, to wit, the Dublin and Wrightsville Railroad Co., but the present plaintiff and the former corporation simply consolidated and the latter absorbed the former with the same management, and the change or consolidation did not change the personnel of the board of directors or management. (3) That at and around said depot, suitable for depot purposes, there are two and three quarter acres of land now uninclosed, and which land is now in actual use by the defendant company for depot purposes." Attached to this proposed amendment there was an affidavit of defendant that it was true and "not offered for delay." The court refused to allow the amendment, and, without other evidence than the petition and answer being submitted, rendered a decree, in term, without a verdict, as follows: "The above-stated case coming on regularly for trial at this term of the court, and it appearing to the court, upon hearing and considering the petition and answer, that there is no issue of fact presented by the answer, which would amount to a valid defense in defeat of the right of plaintiff to permanent injunction, it is therefore ordered, adjudged, and decreed that the defendant, L. C. Beacham, his agents, employees, and confederates, be and they are hereby re-

strained and permanently enjoined from interfering with or interrupting the plaintiff, the Wrightsville and Tennille Railroad Company, its successors and assigns, in the full and free enjoyment of the use and possession of the premises described in plaintiff's petition, with the right to remove obstructions now or hereafter placed on said premises by defendant, his agents, employees, or confederates." The defendant excepted to the disallowance of the amendment and to the granting of the decree.

*Griner & Adams* and *J. K. Hines,* for plaintiff in error.

*Daley & Bussey* and *Peyton L. Wade,* contra.

FISH, C. J. As will be seen by reference to the foregoing report of the case, the title to the land in question was in dispute, and defendant was in possession. It was held in *Vaughn* v. *Yawn,* 103 *Ga.* 557: "The office of an injunction being, under the code of this State, merely to restrain and not to compel the performance of an act, this remedy is not available for the purpose of evicting a party from the actual possession of land, the right to which is in dispute between himself and another; and consequently such a result can not be indirectly accomplished by an order restraining the party in possession 'from further interfering with said lot of land, house and crop' thereon. Such an order, being mandatory in its nature, would afford relief not within the proper scope of the writ of injunction. Civil Code, §4922. *Russell* v. *Mohr-Weil Lumber Company,* 102 *Ga.* 563." To the same effect is *Paschal* v. *Tillman,* 105 *Ga.* 494. It follows that it was error in the present case for the court to enter a final decree that the defendant "be permanently enjoined from interfering with or interrupting the plaintiff . . . in the full and free enjoyment of the use and possession of the premises described in plaintiff's petition, with the right [given to plaintiff] to remove obstructions now or hereafter placed on said premises by the defendant."

2. The amendment offered by the defendant to his answer, and disallowed by the court, set up new matter of defense, after the time allowed for answer had expired, and the defendant failed to make the affidavit, prescribed by the statute, which was necessary in order to obtain the right to so amend his answer. Section 5057 of the Civil Code, as amended by the act of December 21, 1897 (Acts 1897, p. 35, Van Epps' Code Supp. §6199), provides: "The defendant, after the time allowed for answer has expired, shall not

in any case by amendment set up any new facts or defense of which notice was not given by the original plea or answer, unless at the time of filing such amended plea or answer containing the new matter he shall attach an affidavit that at the time of filing the original plea or answer he did not omit the new facts or defense set out in the amended plea or answer for the purpose of delay, and that the amendment is not now offered for delay, or unless, in the discretion of the court, the circumstances of the case or substantial justice between the parties require that such amendment be allowed without attaching such affidavit." In the affidavit attached to the proposed amendment, the defendant did not swear that "at the time of filing the original plea or answer he did not omit the new facts or defense set out in the amended plea or answer for the purpose of delay," but merely swore that the amendment was "not offered for delay." The judge was not bound to allow the amendment, and it is clear that there was no abuse of discretion in disallowing it.

*Judgment reversed. All the Justices concur.*