*Oswell R. Eve,* contra.

---

### 5480.  EARLY *et al. v.* HAMPTON.

1. Although the defendants failed to attach to the proffered amendment to their answer an affidavit as required by the Civil Code, § 5640, that, at the time of filing the original plea or answer, the new facts or defense set up in the amended plea or answer were not omitted for the purpose of delay, and that the amendment was not offered for delay, the lack of such an affidavit will not be considered in determining whether the court erred in refusing to allow the amendment, since the sole reason for disallowing it, as recited in the bill of exceptions, was that it "constituted no defense to plaintiff's suit."

2. A valid defense to a suit based on the alleged breach of a forthcoming bond given for live stock is set up by a plea which alleges that the stock died in the possession of the makers of the bond, and that the death of the live stock was due to the act of God, and was in no wise the result of the conduct or negligence of either the defendant or his sureties, and which indicates with sufficient particularity and definiteness how and in what manner, and for what reason, the death occurred.

3. There is no law in Georgia requiring a demand by the sheriff on either the principal or the surety on a forthcoming bond, in order to establish a breach of the bond. Legal advertisement of the property described in the bond is sufficient notice to the parties, and proof of the advertisement will suffice to show such breach, if the property be not produced at the time and place of sale.

4. If it be beyond the power of the obligors to produce the property at the time and place of sale, on account of its loss or destruction, and this fact be pleaded and proved by the plaintiff, or formally admitted by the defendant, this might dispense with advertisement, so far as the parties to the suit are concerned.

DECIDED SEPTEMBER 1, 1914.

Action on bond; from city court of Floyd county—Judge Reece. January 8, 1914.

*Eubanks & Mebane,* for plaintiffs in error.   *C. I. Carey,* contra.

WADE, J.  A mortgage fi. fa. in favor of Hampton and against Stroud was levied upon a horse in the possession of Early, who filed a claim affidavit and executed a forthcoming bond, with Camp as security thereon, which obligated Early and Camp to deliver the horse to the sheriff of Floyd county on the date and at the place of sale, if it should be found subject to the fi. fa.  On the trial of

the claim case the property was found subject, but it was not produced at the time and place of sale, and suit was filed against Early and Camp on the forthcoming bond. The defendants entered a general denial of the various allegations of the petition, in May, 1913. After the lapse of two subsequent terms of the court the case was tried, in January, 1914, and at the trial the defendants offered an amendment to their original plea. In the proposed amendment they set up that the horse for the production of which the forthcoming bond was given had died while in the custody of Camp, notwithstanding the best possible care and attention had been given the animal from the time the bond was executed until his death; that the horse became ill and died without neglect on the part of the defendants, and not because of lack of attention, food, or medicine, and notwithstanding everything possible to save his life had been done by them. They alleged further that several months prior to the signing of the bond sued upon, the horse was in the possession of the plaintiff, and was at that time affected with some disease of the eyes, back, and spine, which the defendants were unable to describe by name; that at the time the defendants executed the bond the horse was still so affected, and that after that time the disease grew worse, the horse became practically blind, weak in the back and spine, and unable to stand, and continued in that condition until he died. The defendants enumerated the various efforts made by them to minister to the affected horse, the treatments used, and the general care exercised by them, and further made the following allegations: "Defendants say that the disease, sickness, and death of said horse was in no way brought about, aided, or caused by the defendants; that they were guilty of no act of omission or act of commission that caused the sickness and death of said animal, but that its sickness as aforesaid was begun while he was owned by the plaintiff in this case, and that, as aforesaid, said horse was still afflicted with said disease at the time said bond was signed by these defendants. They show that said death of said horse was caused by an act of God, and that he died as the natural cause of things and because of acts and things over which these defendants had no power or control, and in no wise was the death of said horse the result of the conduct of the defendants."

The amendment was not verified when it was offered, as provided

by section 5640 of the Civil Code, but no objection on this account
appears to have been made at that time. The court refused to allow
the amendment, the case proceeded to trial, and the trial resulted in
a verdict in favor of the plaintiff. A motion for a new trial was
overruled, and the defendants excepted to the disallowance of the
amendment and to the refusal of a new trial. The bill of excep-
tions declares that on January 8, 1914, the defendants offered an
amendment to their original plea and answer in this case, and the
court disallowed and refused the amendment *"on the ground that
the amendment so offered constituted no defense to plaintiff's suit."*
A copy of the amendment is included in the bill of exceptions.
The motion for a new trial, in addition to the general grounds,
alleges error because of the refusal of the court to allow the amend-
ment to the answer, and because the court charged the jury that
there was but one issue for them to determine, and that this issue
was the value of the horse at the time the forthcoming bond was
signed by the defendants, without further instructing the jury that
the defendants would be liable under the bond unless the death of
the horse was in no wise the result of their conduct; and because
the court charged that if the horse died while in the possession of
the defendants, they would be responsible for its value, and the non-
production of the property would not be excused, except by an act
of God or the public enemy, and "if you find there is evidence in
this case that these defendants signed this forthcoming bond, as is
set forth in plaintiff's petition, then I charge you that you will
find a verdict for the plaintiff for the amount of the value of the
horse at the time the forthcoming bond was signed by the defend-
ants." This last charge is objected to on the ground that where
the forthcoming bond is for a live animal, and it dies while in the
possession of the makers of the bond, they will be responsible for
its value, unless they show that the death of the animal was brought
about by the act of God and was in no wise the result of their con-
duct. The failure of the court so to charge is insisted upon as
error.

1. The Civil Code, § 5640, provides distinctly that where an
amendment, offered after the time allowed for answer has expired,
sets up any new facts or defense, notice of which was not given by
the original plea or answer, it shall not be allowed, "unless at the
time of filing such amended plea or answer containing the new

matter [the defendant] shall attach an affidavit that at the time of filing the original plea or answer he did not omit the new facts or defense set out in the amended plea or answer for the purpose of delay, and that the amendment is not now offered for delay, or unless in the discretion of the court the circumstances of the case or substantial justice between the parties require that such amendment be allowed without attaching such affidavit." The requirements of this section have been enforced time and again by the rulings of our Supreme Court. See *Beacham* v. *Wrightsville & Tennille Railroad Co.,* 125 *Ga.* 362 (2), 367 (54 S. E. 157) ; *Columbus Show Case Co.* v. *Brinson,* 128 *Ga.* 487 (57 S. E. 871) ; *Kirby Planing-Mill Co.* v. *Hughes,* 11 *Ga. App.* 645 (75 S. E. 1059). If the amendment offered in this case had been objected to on the ground that it was not verified as required by law, or if the record simply disclosed the fact that the amendment was not so verified and that the judge refused to allow it, without assigning the reason why he refused to allow it, his action in declining to allow it would not be reversible error; but it appears from the record that the amendment was disallowed on the specific ground that "said amendment so offered constituted no defense to plaintiff's suit." In the case of *Edwards* v. *Boyd Co.,* 136 *Ga.* 733, 738 (72 S. E. 34), the point is explicitly ruled, and that decision is controlling in this case. In the decision it was said: "It was insisted in the brief of counsel for defendant in error that the amendment was properly disallowed, because it was offered after the appearance term, and there was no affidavit attached as required by Civil Code of 1895, § 5057 (Code of 1910, § 5640), as amended by the act of December 21, 1897 (Acts 1897, p. 35) ; but no such objection was made to its allowance at the time it was offered, and it appears from the recitals in the bill of exceptions that the judge disallowed it, not because of a failure to attach the statutory affidavit, but upon the ground that the matter referred to did not constitute a valid defense to the action. · Had the point been made at the trial, it could have been met, if need be, by making the affidavit. *Ward* v. *Frick,* 95 *Ga.* 804 (22 S. E. 899). At any rate, the defendant would have had an opportunity to do so. But in view of the recitals in the bill of exceptions as to the ground on which this amendment was disallowed, it would be going too far to deprive a defendant of a substantial defense for the mere reason that no affidavit was attached,

and the judge might not have exercised his discretion in allowing it to be filed without any affidavit, when it appears from the bill of exceptions that it was not disallowed on discretionary grounds. If the amendment was open to such objection, the plaintiff should have urged that with the other objections which were made; but he waived its form by objection to its sufficiency in law without making the question as to its form." In *Benson* v. *Marietta Fertilizer Co.*, 139 *Ga.* 691 (77 S. E. 1125), the court held that' where there is no affidavit accompanying the proposed amendment, as required by the Civil Code, § 5640, and "the record fails to show upon what ground the court refused to allow the amendment," there is no abuse of discretion in disallowing it, even if it be otherwise good. In other words, in the case last mentioned, since the record does not disclose that the amendment was refused for other reasons alone, the court assumes that the refusal of the trial judge to allow it was on account of the absence of a proper affidavit, and such refusal on that ground was proper. The reference in that case to the fact that the record failed to show upon what ground the court refused to allow the amendment was obviously a recognition of the doctrine laid down in *Edwards* v. *Boyd,* supra.

2. "Under the expression 'act of God' are comprehended all misfortunes and actions arising from inevitable necessity which human prudence could not foresee or prevent. Hence it is held that illness, being beyond the power of man to control or prevent, is the act of God." 1 Words & Phrases, 124. In *Fish* v. *Chapman,* 2 *Ga.* 349, 356-7 (46 Am. D. 393), Judge Nisbet said, that *"unavoidable"* is synonymous with *inevitable,* and *inevitable or unavoidable accidents* are *acts of God;* by which is meant "any accident produced by physical causes which are inevitable; such as lightning, storms, perils of the sea, earthquakes, inundations, sudden death, or illness." In *Young* v. *Waldrip,* 91 *Ga.* 765 (18 S. E. 23), where a mule fell in a post-hole on the premises of the person chargeable with its care, which hole was overgrown and concealed by grass, the court held that this was not an act of God, and would not relieve a claimant of the property from his contract to produce it under the provisions of a forthcoming bond executed by him. The court said: "A plea alleging the death of the mule without negligence or fault of the claimant, was insufficient and should have been stricken on demurrer, *there being no allegation that the death*

*was caused by the act of God*" (italics ours). The amendatory plea under consideration not only alleged that the death of the horse occurred without fault or negligence on the part of the defendants, and notwithstanding the utmost care on their part in providing proper food, shelter, medicine and medical attention, but it distinctly alleged in so many words, and in exact fulfilment of the requirement set out in *Young* v. *Waldrip,* supra, that the death of the horse was caused "*by the act of God.*" In the case of *Carr* v. *Houston Guano & Warehouse Co.,* 105 *Ga.* 268 (31 S. E. 178), the four mules described in the forthcoming bond were not present at the time and place of sale, and the defendant sought to escape liability for his breach of the bond, by setting up that a return of the property had been prevented by an act of God. The court held that the evidence in that particular case was not sufficient to prevent a recovery, and cited with approval the case of *Young* v. *Waldrip,* supra, in which the court said that when "the claimant takes the property in his possession, he is responsible for its care and safe-keeping, and if it is injured or wasted while in his possession, it is at his risk. If it is a live animal, and dies while in his possession, he is responsible for its value, unless he can show that its death was caused by the act of God, and is in no wise the result of his own conduct. . . We are clear that nothing else than this will or ought to excuse a claimant for non-production of the property according to the terms of the bond." One of the four mules was killed by lightning, and one died with blind staggers, and two mules died in a swamp in a pasture; and the court held that the value of the animal stricken by lightning, as shown by the proof in that case, was not involved, and that the evidence simply established that one of the remaining mules died with the disease known as blind staggers and the other two died in a swamp in a pasture, that the pasture was a fair one, and that a crop of corn and peas had been raised in the pasture. "The proof is otherwise silent as to the cause of the disease and the care and attention which the animals received from the obligors. This testimony is not sufficient to show that the death of the animals did not result from improper care and attention on the part of the principal obligor in whose possession the mules were suffered to remain after the execution of the bond; and in our judgment the verdict of the jury is authorized by law and is in accord with the evidence." It

will be seen that in that case the ruling is based upon the view that the testimony was not sufficient to show that the death of the animals did not result from improper care and attention on the part of the principal obligor; and the inference from this is that if the evidence had demonstrated satisfactorily that the death of the animals resulted through no fault or negligence on the part of such obligor, it would have relieved him from the obligation of the bond.

Again referring to the case of *Young* v. *Waldrip,* supra, it will be noted that the court there said: "The falling of a mule into a post-hole overgrown and concealed with grass, if this occurred on the premises of the person chargeable with the care of the mule, is not the act of God and will not relieve a claimant from producing the mule in fulfilment of his contract in the forthcoming bond. The evidence in this case does not show upon whose premises and under what circumstances in detail the mule was killed. The burden of proof being upon the defendants to account fully for the non-production of the property, the finding of the court in favor of the defendants was unwarranted." From this it appears that had the proof established that the concealed post-hole, which brought about the death of the mule, was elsewhere than on the premises of the person chargeable with the care of the mule, and that the injury occurred under circumstances exonerating him from the charge of negligence, it would have been held that the jury would be authorized to find the death of the mule to be the act of God. In *Moon* v. *Wright,* 12 *Ga. App.* 659 (78 S. E. 141), the court said: "And it was not shown that the death of the live stock was due to the act of God and was in nowise the result of the conduct or negligence of either the defendant or his sureties." See also *Rockmore* v. *Garner,* 9 *Ga. App.* 369, 370 (71 S. E. 506).

We think the amendatory plea came up to the requirements of the law, and the trial court erred in disallowing it, and in thereby preventing the defendants from placing before the jury whatever evidence they might have been able to produce tending to establish that the horse died through no fault or negligence on their part, and that its illness and death were an act of God. And since the amendment set up a legal defense, the court erred in limiting the consideration of the jury merely to the value of the horse at the

time the forthcoming bond was executed. No discussion of the exception to the charge is necessary.

3, 4. The plaintiffs in error complain that the evidence did not warrant the verdict, but, on the contrary, demanded a verdict in their favor, because the record does not disclose that any demand for the property was made by the sheriff on either the principal or the surety on the forthcoming bond, or that the sale was legally advertised. It is well settled that the law of this State does not require such a demand in order to constitute a breach of the bond. A breach is occasioned if the officer regularly advertises the property for sale, and it is not produced at the time and place of sale. *Stroud* v. *Hancock,* 116 *Ga.* 332 (42 S. E. 496) ; *Thompson* v. *Mapp,* 6 *Ga.* 260; *Mapp* v. *Thompson,* 9 *Ga.* 42; *Hogan* v. *Morris,* 7 *Ga. App.* 232, 235 (66 S. E. 550). Here it does not appear that any demand was made, nor does it appear, from the petition or from the original answer, that the necessity for advertisement was removed by any act of the defendants, or by a loss of the property through an act of God. Where property for which a forthcoming bond has been given has been sold and the proceeds appropriated by the makers of the bond, who thus put it out of their power to deliver the property to the levying officer in compliance with the terms of the bond, their conduct constitutes a breach of the bond and dispenses with advertisement; and by parity of reasoning it appears to us that if the petition or the answer (in behalf of all the obligors in the bond) had set out facts showing the impossibility of making any delivery of the property to the levying officer, it would have appeared that there was no necessity for readvertising the property, in order to constitute a breach of the forthcoming bond; and hence the lack of advertisement would be immaterial. *Lassiter* v. *Byrd,* 55 *Ga.* 606; *Stinson* v. *Hall,* 54 *Ga.* 676; *Bowen* v. *Penny,* 76 *Ga.* 743; *Bowden* v. *Taylor,* 81 *Ga.* 199 (6 S. E. 277) ; *Spence* v. *Coney,* 97 *Ga.* 442 (25 S. E. 316) ; *Anderson* v. *Banks,* 92 *Ga.* 123 (18 S. E. 364) ; *Williams* v. *Empire etc. Co.,* 97 *Ga.* 446 (25 S. E. 172). Since, under our ruling, the case must go back for a new trial, if at that trial the amendatory plea heretofore disallowed by the court is again offered (with, of course, proper verification if it should then be objected to for lack of such verification), this would dispense with proof of advertisement, since it appears therefrom that the horse was dead, and the principal and

the surety on the bond were therefore unable to produce the property at the time and place of sale.

*Judgment reversed. Roan, J., absent.*