1. The evidence authorized a finding that the attorney who was employed on basis of a contingent fee was not entitled to any fee or compensation whatever from his client, the contingency never having happened, and that the client was entitled to recover the corporate stock certificates which she had delivered to him for use in a suit to be filed by him against another in her behalf.
2. Accordingly, the judge in trying the case of the client against the attorney, jury having been waived, did not err in rendering judgment awarding the stock certificates to the client, and in refusing to declare a lien thereon in favor of the attorney, as prayed in his answer.
 No. 13691. MAY 19, 1941.
Mrs. Van Valkenburg instituted an action against Lewis, her former attorney, to recover described corporate stock certificates alleged to have been delivered to the attorney for use in a suit to be filed by him in her behalf against E. S. Grant, the fee of the attorney to be twenty per cent. of any sum recovered, and wholly contingent. In her petition it was alleged, that, although he filed a suit in her behalf, he has not brought the case to trial, and stated to her that he would not prosecute it further, and advised her to employ another attorney if she so desired; and that although in the circumstances she is not indebted to him in any sum, he has nevertheless refused to deliver the stock certificates to her unless she pays to him a stated sum as a fee to which he claims to be entitled. The plaintiff prayed for recovery of the stock certificates and certain equitable relief. In his answer the attorney alleged, in effect, that after filing the suit in his client's behalf he negotiated with the opposite party through his attorneys an agreement for settlement which, if accepted by his client, would have been the equivalent of a full recovery; that she at one time "accepted in writing the proposition of settlement," but later notified him not to proceed with the settlement unless he, the attorney, would "cut" his fee in half; that still later the client agreed to pay a fee which the defendant was willing to accept, but that in the meantime the offer of settlement, which had never been signed by the opposite party or his attorneys, had expired by lapse of time, and it thus became impossible for the defendant to "settle said case and recover the money sued for." The attorney further alleged that he was entitled to a fee of twenty per cent, of the amount sued for, and prayed that a lien for this amount be set up and established by order or decree of the court. Under a stipulation of the parties the case was tried before the judge without a jury. After the introduction of evidence on both sides, he found in favor of the plaintiff and rendered judgment awarding to her the stock certificates described in her petition. A motion for new trial was overruled, and the attorney excepted.
It appeared from the evidence that the plaintiff had purchased the stocks from E. S. Grant, a dealer or broker doing business as Grant Company, and claimed that she had been defrauded in the sale. It seems that there was no express agreement as to the kind of suit that would be brought by the attorney. He filed a suit *Page 274 
based on the theory of rescission, and sought to recover the full purchase-price, $4137.50, and in the later controversy with his client he calculated the amount of his fee on basis of this sum. On the other hand, the client contended that the stocks purchased had a value of fifty per cent. of the purchase-price, and that the amount of the fee should be determined as twenty per cent. of the difference, provided the attorney was entitled to a fee in any sum whatever. It was in the light of these contentions that the judge admitted certain evidence over objection, and made the rulings which were complained of in the motion for new trial. The plaintiff was permitted to testify that before she employed the attorney she had been advised by E. S. Grant, from whom she purchased the stocks, that he would take the stocks back and resell them, so that she would not have a loss of more than $500; and that the attorney advised her not to accept the offer, stating that he would sue and ask for the full amount, including interest and attorney's fees. The fee claimed by the attorney in his answer, on basis of twenty per cent., amounted to more than $800. The foregoing testimony of the plaintiff as to her previous conversation with the dealer or broker, and the advice of the attorney, was objected to in this language: "I don't think that would be either competent or relevant in this case." The overruling of this objection is complained of in the first special ground of the motion for new trial.
The next ground complained of the admission of similar evidence as follows: "Q. Did he tell you how much his fee would be? A. He said he would take it on a contingent basis, twenty per cent. based on recovery. Q. Did he make any statement to you as to what [the] fee you would have to pay him would be in comparison with the $500 loss you had told him you [would] have to take if you went back to Grant Company? A. There was never any specific amount mentioned. but he did say that since he was asking for the seven per cent. interest and attorney's fees that I could never lose over $200, and it was better to lose $200 than to lose $500. Q. Now those are the circumstances under which you employed him? A. Yes, because if I could recover for a loss of $500, there was no point in going through a lawsuit and losing more." To the foregoing evidence the following objection was made: "I think that would be merged in the written agreement. If they have got a written agreement in this case, any oral agreement will be merged *Page 275 
into that written agreement." The court: "Well, this agreement is a little indefinite. The sum recovered. Now, she says she could have recovered all but $500, before she went to him. I overrule the objections, and let it go in on the theory that the contract is ambiguous." The ruling as thus made by the court referred to the agreement between the present plaintiff and defendant in reference to the latter's fee, which agreement was in writing and stipulated a fee "equal to twenty (20%) per cent. of any sum recovered. If no recovery is had, then said attorney is to charge . . no fee."
In addition to what has been stated, the evidence showed that the agreement for settlement, as negotiated by the defendant acting as attorney for the plaintiff in the former suit, did not provide for a cash settlement. It called for the payment of a relatively small payment in cash, and sale of the stock certificates at different times during a period of more than two months, the proceeds to be delivered to the plaintiff as sales were made, with further proviso that any balance remaining unpaid at the end of such period would be paid in cash by the defendant, and, if not paid, that the plaintiff would have the privilege of taking judgment therefore. Still other conditions were contained in the proposed settlement. It did not provide for payment of interest.
In the present case the plaintiff, on direct examination, testified as follows: "The proposition of settlement was in writing. . . This is a copy of it. That is my signature on it. I signed that paper out at Mr. Lewis's home. I told him I didn't like the way the contract sounded, and he agreed with me that he didn't like it either, but I was to go ahead and sign it and take it home and read it over carefully, and if I was not pleased with it, to call him. I called him at ten o'clock that night; that same night. His wife said that he was asleep, and I asked her to have him call me the next morning before he went to town. He called me. I told him that I was not pleased with it, and that I didn't like the arrangements, because I didn't like to take any other settlement than the settlement in full cash. This settlement was not in cash; some was in cash and the other was to be paid at future dates. The settlement was for the original amount of my investment, but not for the settlement of interest over the period of two years. My suit included a claim for interest. I came down to his office later that morning. I told him that I would like a full cash settlement; *Page 276 
and then the matter of fees was discussed. He said he would call Grant Company and see if he could get a cash settlement, and then he called them, and they said no. Then I talked to him about the amount of his fees. His fee, he said, was twenty per cent.; and I said, `Since you are asking me to take less than what I am suing for, I think you should have a fee of less than twenty per cent.' Then he told me that his fee would be $837.50, and I told him that I would not settle under those conditions — that I had rather sue and get the full amount, plus the interest. He said that the agent was dead, and that we didn't have a good suit; and I told [him] that since it was not my fault that he died — I am taking less than I should have gotten from Grant Company, that I thought he should be willing to take less. So eventually he agreed to take $600, and when he called Grant Company and told him that we were ready to settle, they said they had changed their minds, they didn't wish to settle. The $837.50 that he claimed was twenty per cent. of the full amount that I had paid Grant Company. I told him that I had misunderstood it, and that I thought it was based on the amount of money that he recovered, because I had half of that to begin with, the stock was worth half of that, and I thought it was based on the half of the money that he recovered, and not the difference between the value of the stock and my original investment. I had the stock at the time I employed him. I say it had a value of about half of what I had paid to Grant Company, and I agreed to pay him $600, which was $100 more than I could have settled for myself, and then — that was later. I had the conversation with reference to the $600 fee that he agreed to take and I agreed to pay. Perhaps two days after this was presented to me, and I signed it. This agreement to settle was for $4,137. That was in May of this year, 1940. I never paid him the $600, and he never accepted the $600. The suit was based on recovery. He agreed to take the $600, and I agreed to pay it to him; then he called Grant Company, and they refused it, refused to settle, so there was never any settlement made. The suit is still pending. I never did receive any amount of money whatever on my claim against Grant Company, the one which I employed Mr. Lewis to represent me in. I have received no money at all. I have tried to get the suit up for trial. It was not taken off the calendar, to my knowledge. I know it was down for trial. *Page 277 
Mr. Lewis told me that he refused to try it; that there was no case there; and that if I would pay him $300 he would turn over the papers and my stock, and I could employ another lawyer to try it. That was after the conversation about the settlement, after Grant Company refused to settle. I tried to get him to go on with the case. It was on the calendar, and he had it checked. I could not say whether that was after the time he told me he would not try it. After he said he would not try it, I made an effort to get him to go ahead and prosecute it. I consulted another lawyer about it after he told me that he would not try it. They did not take over the case. I asked Mr. Lewis for the papers. He refused to give them to me. He said he would give them to me if I would pay him $300. I asked him to give my stock, and he would not deliver them to me. He said he would hold them for his fee."
The testimony of the plaintiff on cross-examination was, in the main, consistent with that given on direct examination.
The attorney, testifying in his own behalf, contradicted the plaintiff's testimony in several particulars, mainly as to their conversations before employment, and as to whether the proposed settlement was unconditionally approved by her; but there was no dispute as to the written terms of the contract of employment or as to the terms and conditions of the proposition for settlement. Although the terms of the settlement had been agreed to by the opposite party and his attorneys before its submission by the present defendant to his client, it was never at any time signed by them or any of them. It appeared without dispute that whether the terms of the settlement were unconditionally approved by the plaintiff before the controversy regarding fees arose, such controversy did arise before any notice of acceptance was given to the opposite party, and that it continued for several days, preventing such notice until after the opposite party was no longer willing to settle. Other evidence was introduced, but none that could change the result in this court, and such additional evidence need not be stated.
The attorney was employed on basis of a contingent fee of twenty per cent. of any sum recovered. If the settlement which he negotiated had been accepted by his client, whatever *Page 278 
sum she received thereunder might perhaps have been considered as a sum recovered, within the meaning of the contract of employment. Middleton v. Westmoreland, 164 Ga. 324
(138 S.E. 852); Camp v. United States Fidelity Guaranty Co.,42 Ga. App. 653 (2) (157 S.E. 209); Thomas v. TravelersInsurance Co., 53 Ga. App. 404 (185 S.E. 922). The client, however, as the judge was authorized to find, did not accept the proposition of settlement within the time that it was open for acceptance, and acceptance as finally tendered was declined. The settlement therefore was never consummated. The plaintiff could not in law be charged with the delay, when the proposed settlement contemplated only a small payment in cash and contained other conditions which in any view made it less than an immediate full recovery; and this is true even though she may have been notified that the offer of settlement was conditioned upon acceptance within a limited period. The proposition being one which she was not bound in law to accept in any event, it was her right and privilege to consider it as long as she pleased, and to delay decision for any reason that appealed to her. It follows that the attorney did not succeed in recovering any sum, and that his failure to recover through settlement was not attributable to any legal fault on the part of the plaintiff; that is, under deductions authorized by the evidence. The contingency upon which he was to be entitled to a fee not having happened, and the plaintiff not being at fault, the judge did not err in refusing the relief sought in the attorney's answer. and in rendering judgment in favor of the plaintiff. Whether a different judgment might have been proper under the law, if the plaintiff herself had wrongfully prevented the happening of such a contingency, is a question which need not be decided in the present case; nor is any decision made thereon. See Spence v.Coney, 97 Ga. 441 (25 S.E. 316); Stephens v. Fulford,153 Ga. 637 (112 S.E. 894); Byrd v. Clark, 170 Ga. 669
(153 S.E. 737); 6 C. J. 743, 744, § 319. The attorney did not claim compensation on any such basis, and, as appears in the judge's order, he even "disclaimed any right to recover on such basis." Compare Haygood v. Perkins, 142 Ga. 168
(82 S.E. 544).
There is no merit in the contention of the attorney that the plaintiff was not entitled to the relief sought, for the reason that she failed to do equity by paying or offering to pay "the amount *Page 279 
due him on his contract." Under the pleadings and the evidence, and the contingent terms of the contract, the judge was authorized to find that the plaintiff did not owe the defendant anything. There was no substantial merit in either of the special grounds of the motion for new trial, and the court did not err in refusing a new trial. Let it be said in this connection that the attorney appears to have acted in good faith throughout the entire transaction. The inference is that he was not as careful as he might have been with respect to his own compensation, or that he might have acted upon an honest misconception of both his right and duty, upon the happening of the controversy between him and his client.
Judgment affirmed. All the Justices concur.