No. 35.—ICHABOD H. ALBERTSON *et al.* plaintiffs in error, *vs.* THOMAS HALLOWAY, for the use of David Halliburton, defendant in error.

| 16 | 377 |
|----|-----|
| 16 | 377 |
| 123 | 690 |
| 16 | 377 |
| 124 | 956 |

[1.] A plea of failure of consideration, without fraud, may be pleaded to a note which is a joint and several promise to pay by two, which purports to be over the hand and seal of the makers, and has a seal or scroll affixed to the name of one, the other signing with his own proper hand, as security.

Debt, in Houston Superior Court. Tried before *Judge* POWERS, April Term, 1854.

This was an action of debt, brought by Thomas Halloway, for the use of David Halliburton, against Ichabod H. Albertson and Stephen Brown, on the following note:

" On or before the first day of January next, we or either of us promise to pay, or cause to be paid, unto James Halloway, the sum of Eleven Hundred and Fifty Dollars, for value received. Witness our hand and seal, this the 12th day of March, 1847. 　　　　　ICHABOD H. ALBERTSON, [L. S.]
　　　　　　　　　　STEPHEN BROWN, Sec'ty.
Witness, D. P. SMALL."

To this action the defendants pleaded the general issue—payment, and partial failure of consideration.

On the trial, plaintiff moved to strike the defendant's plea of " partial failure of · consideration," on the ground that no fraud or illegality was alleged in the contract, and the same being under seal. The Court sustained the motion, but allowed the defendants to amend their plea, by ·charging fraud in the contract, on which the note was founded, and plaintiff excepted.

Plaintiff then read the note to the Jury and closed.

Defendant then read in evidence the testimony of Dempsey P. Small and two other witnesses, taken by interrogatories, in

substance, "that the note sued on was given to Halloway for two negroes, Westly and Ann; the former, valued at the time of the sale, at $700, and the latter at $450. Had known Ann from the time Albertson purchased her, and she has been, during the whole period, afflicted with rheumatism—unable to work, and worth nothing; at the time of the trade, Halloway said her feet were sore from travelling." The defendant then read in evidence a bill of sale from Halloway to Albertson, warranting the soundness of the two negroes, Westly and Ann, dated the 12th March, 1847.

The defendant introduced other witnesses, all testifying that the girl Ann, in her condition, was worthless; but that if sound and healthy, was worth $400.

The plaintiff then read in evidence the answers of Albertson, one of the defendants, to a set of interrogatories filed against him, as follows: "that he did, while Halliburton held the note as agent for Halloway for collection, ask him for indulgence on the note; and at that time, it was his intention to pay it, but the negro Ann continuing to be worthless, he changed his mind and determined not to pay so much of the note as included the price of Ann, and so informed Halliburton, who, thereupon, commenced suit on the note.

Wm. H. Miller, sworn, testified, "that the parties, Halliburton and Albertson, were together at one time, attempting to settle the matter; and Albertson stated to Halliburton, that he was sorry that he had not notified him sooner, or before he, Halliburton, had bought the note, that he intended to defend it."

It was admitted that Halliburton had paid the note to Halloway, who was suing for the use of Halliburton.

The defendant requested the Court to charge the Jury, "that if the consideration of the note had partially failed, they should deduct from it the price agreed to be paid for Ann, if she was proved to be wholly unsound." The Court refused so to charge, but did charge, that the instrument sued on, being under seal, partial or total failure of consideration could be plead, only in case of fraud or illegality in the transaction.

Albertson *et al. vs.* Halloway, for use, &c.

Here fraud had been plead and relied on, and if they were sat-isfied, from the evidence, that a fraud was perpetrated on the defendant in the sale of the negro by plaintiff, then they should find as defendant requested the Court to charge.

To which charge, Counsel for defendant excepted, and upon this exception error has been assigned.

E. WARREN, for plaintiff in error.

JOHN M. GILES, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] We believe that the rule, that a plea of failure of consideration cannot be used as a defence to a specialty, applies to no other instruments, save such as were known to the Common Law as specialties; as deeds, bonds and instruments executed with like solemnities of *sealing and delivery.*

It has been common for Courts to say that such defence cannot be set up to *an instrument under seal.* But we think that these words were used, or should have been used, with reference to such instruments as were executed with the ceremonies necessary to specialties at Common Law.

The rule which forbids the plea of failure of consideration to a speciality, had its origin at a time when the Common Law attached the utmost importance to the ceremonies necessary to the execution of every such instrument; and the ceremonies were performed by acts formal, significant and solemn. In process of time, as the execution of such instruments became more frequent, and was brought more into relation with the diversified business of society, the *method* of these ceremonies was much relaxed in its formality, but still, something that was considered equivalent thereto, was required. Such is still the requirement of the Common Law.

Let us see what is this requirement, as to specialties. A speciality is a writing, *sealed and delivered,* containing some agreement. (1 *P. Wm.* 13. *Willes,* 189.) "Sealing and

delivery is still the criterion of a specialty." (2 *Serg. & R.* 503.)

A seal may be represented by almost anything purporting to be a seal; and delivery may be manifested by almost anything which affords evidence that a delivery was intended. But still the requirement is, that in specialties the solemnities of sealing and delivery, as known to the Common Law, shall be represented by something intended to have that effect.

Now, the elementary Common Law reason why the consideration of a speciality could not be denied was, that "the solemnity and deliberation with which, on account of the ceremonies to be observed, a specialty is presumed to be entered into, attach to it an importance and a character which do not belong to a simple contract." (*Ch. on Con.* 4.) Hence, it has been held, that in general, no consideration is requisite to render a specialty obligatory, unless it be impeached for fraud or illegality, and that it cannot be defeated by proof of either partial or total failure of consideration. (*Plow.* 308. 2 *Black. Com.* 446. *Ch. on Con.* 5. · *Fallows vs. Taylor,* 7 *T. R.* 475, 477.)

All the cases which I have seen, (and they are many, both in England and the United States) where this rule has been maintained, apply to such instruments as were specialties at Common Law. And when Courts and Commentators apply the rule to "instruments under seal," it will be found that they are really speaking of such as were specialties at Common Law. Instruments under seal, at Common Law, were always such as were intended to be accompanied with other solemnities and ceremonies, necessary to give them effect; and hence, by a figure of speech, quite common, the class has been designated by one of its characteristics, viz: *sealing.*

But we can conceive, that in process of time the exigences of trade and commerce, or mercantile usage, or the customs of a people, among whom the credit system prevailed to a great extent, might have rendered common, as an evidence of contract, an instrument possessing but one of these characteristics of the specialty at Common Law, in which either the solemnity

of sealing or that of formal delivery, was dispensed with. In such case, there seems to be no reason why such instrument should not be binding on its maker—not as a specialty is binding, but only as evidence of the contract, according to its terms.

Let us suppose, then, that in the multiplicity of the concerns of advancing trade and commerce, a debtor found it expedient to negotiate with his creditor, informally and without delivery, in the presence of witnesses, an instrument signed by him and under his seal, having such terms as were not appropriate or common to instruments, known as sealed instruments, or specialties at Common Law—the terms of the instrument being a promise to pay. a sum of money, absolutely and at all events, to the creditor, or any one who might hold the same, on a day specified, in consideration of some advantage or benefit, to him, the maker.

Such an instrument would certainly be a good promise to pay by the maker; but it would be purposely wanting in one of the Common Law characteristics of a specialty. It would not be a bond or obligation, in the sense that Lord *Coke* says that word "is usually taken in the Common Law"; for that is an instrument containing a penalty, with condition to pay a sum of money. (*Co. Litt.* 172. *Bac. Abr. Oblig. A.*) It would not be a *bill obligatory*, which might be sometimes under seal; and is, according to *Coke*, "most commonly taken for a single bond". It could be neither of these, inasmuch as it would be, in terms, a promise to pay a sum of money for a valuable consideration, absolutely and at all events, on a day fixed, (which is the characteristic of a promissory note. *Bayley on Bills,* 1 *Story on Prom. N.* §12,) and it would not have been formally delivered.

This is just the sort of instrument which is in common use, and known as a promissory note, under seal. A seal is affixed to it, perhaps, with reference to the Statute of Limitations; but from its very terms, the instrument is intended to be negotiated, especially when payable to bearer, without the solemnity practiced at Common Law, in the execution of specialties,

and especially without any solemnity as to delivery.　Of course, it must be delivered; that is to say, it must pass from the maker, in order to have effect: but it is not passed to the payee, as the specialty at Common Law was passed to the grantee or the obligee, with that formal ceremony or its equivalent, necessary to give effect to the latter instrument.

It is somewhat difficult to classify this instrument, (a note under seal) for it is not a promissory note, as that is never under seal, we are told.　(2 *Bouv. Dic.* 579.)　It seems wrong to place it with agreements by parol; and all contracts, it is said, must be either agreements by specialty, or agreements by parol.　*Rann and another vs. Hughs,* (7 *D. & E.* 350.)　This is certainly true in the light of the Common Law.　Still, as we have shown, it is quite as difficult to place such an instrument among specialties.　It would seem, therefore, that that which is called a promissory note under seal, is, in the eye of the Common Law, anomalous.　It is a sort of spurious offspring from the specialty and the promissory note, whose legal *status* it is not easy to define.

With reference to the Statute of Limitations, we believe that such an instrument has been sometimes called a specialty, and subject only to the Statutory bar applicable to such instruments. .Whether it was rightly called a specialty or not, the decision was correct, for the Statute (our act of 1839) applies the bar of 20 years, not to specialties, but to "bonds *or* instruments under seal."

Perhaps the view we have taken, will be strengthened by a consideration of our legislation on the subject, and the unvaried practice of our Courts.　The Judiciary Act of 1799 (*Sec.* 25*th*) makes promissory notes and other liquidated demands, of equal dignity with bonds and other specialties.　The latter, then, in our State, because of the "solemnity and deliberation" with which they are executed, are of no higher consideration than promissory notes.　Yet we know that the rule we have been considering, has not been applied to ordinary promissory notes, but that it has been the immemorial practice, in our State, to allow pleas of total failure of consideration (and of partial

failure, since the Act of 1836) to suits on such notes.    Must not this have been upon the principle, that the rule we have been considering was applicable to such instruments as possessed the Common Law incidents of specialties, and to none others?

On the whole, it would seem that a promissory note, under seal, intended to be negotiated and put into circulation from hand to hand, without formal delivery, has not the characteristics of a specialty at Common Law, and that a failure in the consideration of the same may be pleaded.

But whether we are right in this view or not, we feel very sure that the note sued on, in this case, cannot be classed with specialties at Common Law, and must be regarded as anomalous.

In its terms, it is a joint and several promise to pay by two, purporting to be over the hand and seal of the makers, and signed and *sealed* by one—the other *signing* only, and as security.

Now, it is doubtful whether or not, as to one of these defendants, this is a sealed instrument.    For we are told by some eminent Courts, that "although in the body of the writing, it is said that the parties have put their hands and seals; yet, it is not a specialty, unless it be actually sealed and delivered." (2 *Serg. & R.* 503.)    And so, it was not at Common Law. Whether this be the law, in our State or not, need not be decided.    Suffice it to say, that this instrument, in its form, tenor and mode of execution, deviates from all rules established by Common Law principles, as applicable to specialties, and, in character, was unknown to the Common Law.    The rigid Common Law rule, therefore, which forbids that the consideration of a specialty should be denied, cannot appropriately be held applicable to it.

Judgment reversed.