3269.   WILLIAMS-THOMPSON CO. *v.* WILLIAMS *et al.*

1. For the payee of a promissory note to release one of the makers, there must be a contract to that effect, founded on a consideration, except, of course, in certain cases where release flows, by operation of law, from conduct of the payee.

2. Where the payee of a joint promissory note executes and delivers to one of the makers a writing purporting to release him from all liability thereon, the writing is ineffectual for that purpose if it is voluntarily given, without legal benefit to the maker of the release, or detriment to the person in whose favor it is made.

3. "The release of or compounding with one surety discharges a cosurety;"

but an attempt to release one of the sureties does not have this effect where the attempted release is unenforceable for lack of consideration.

4. To "compound" is to compromise or make a composition whereby a creditor discharges his debtor on payment of a smaller sum than that actually owing. There was no compounding with the surety in the present case. -

5. Even if the rule were that the payee of a joint note would discharge all the joint makers thereof by giving to one of them the money to pay off his ratable part of the debt, no such effect ensues where the money is given by a third person.

DECIDED JANUARY 15, 1912.

Complaint; from city court of La Grange—Judge Harwell. January 9, 1911.

*Anderson, Felder, Rountree & Wilson, E. R. Bradfield Jr.,* for plaintiff. *F. M. Longley, M. U. Mooty,* for defendants.

POWELL, J. W. L. Williams was indebted to the Williams-Thompson Company, a corporation. On January 25, 1909, in settlement of this debt, he gave to the corporation a negotiable promissory note, signed by himself as principal and by six others (the present defendants, Williams himself not being found or served), who signed apparently as joint makers, but in fact as sureties. On the next day after the note was signed and after the original transaction was closed, one of the sureties, named Harris, came to the officer of the corporation who had taken the note and stated that he wished to "come off" the note. This officer of the corporation, being, for some reason, willing to accommodate Harris, gave him a written instrument "releasing W. H. Harris from all responsibility by reason of his indorsement" of the note in question. Harris gave nothing for this release, and the corporation received nothing for executing it. Later the officer told Harris that he had no power to bind the corporation by his act, but that he would nevertheless protect him, and gave him $100 of his (the officer's) own money with which he might discharge his share of the liability; but Harris returned this money to him. The six sureties, being sued on the note, pleaded that Harris had been released, and that, as the others were joint sureties with him, they were also released. Some point is made as to the authority of the particular officer to bind the corporation, but we need not go into that question, as there is another point that controls the case. The plaintiff's exceptions are to the direction of the verdict for the defendants.

1. The release of a party to an executed contract is itself a

contract, and, to be binding, must be founded on a consideration. *Bruton* v. *Wooten,* 15 *Ga.* 570; *Stamper* v. *Hayes,* 25 *Ga.* 546; *Molyneaux* v. *Collier,* 30 *Ga.* 731; *Fowler* v. *Coker,* 107 *Ga.* 817 (33 S. E. 661).

2. This release was without consideration. The consideration of a contract usually must consist of some benefit to the person to be bound, or of some detriment to the other party. Under this contract of release, all the benefit accrued to the taker of the instrument, and none to the maker; all the detriment accrued to the maker, and none to the taker. Hence, it was without consideration. Clark, Contracts, 106. At common law a release under seal conclusively imported a consideration, but this is not now true, as respects the American States generally (Williston-Wald's Pollock on Contracts, 813), or as respects Georgia in particular. *Lacey* v. *Hutchinson,* 5 *Ga. App.* 865 (64 S. E. 105); *Bruton* v. *Wooten,* supra. The record does not show whether the release relied on in this case was under seal or not, but, in the light of the authorities just cited, this makes no material difference, as lack of consideration was affirmatively shown by the proof.

3. "The release of or compounding with one surety discharges a cosurety." Civil Code (1910), § 3542. If the so-called release had been valid, Harris would have been released, and so would his cosureties; but, since the release is invalid for lack of consideration, neither he nor his cosureties are released. *Fowler* v. *Coker,* supra.

4. There is nothing in the evidence on which to base the suggestion of counsel for the defendants in error that there was a release of the other sureties through the plaintiff's compounding with Harris. To "compound," according to Black's Law Dictionary, is "to compromise, to effect a composition, to obtain discharge from a debt by the payment of a smaller sum." Harris paid nothing; hence, the transaction was not a compounding.

5. The $100 which the plaintiff's officer afterwards paid to Harris out of his (the officer's) own money certainly did not affect the case. Even if the giving of this money had been the company's own act, it is doubtful that it would have operated as a release of the other sureties; for when Harris had paid in this sum, though he would thereby have paid his ratable part if all the sureties proved solvent, he would not have discharged his liability as a joint maker of the note. No legal harm would have been done his cosureties.

But certainly the individual act of one of the officers of the corporation in giving his money to Harris did not affect the liability of any of the parties.

The hardship of the case is that the principal on this joint note proved unworthy of the confidence reposed in him by his friends who stood his security. The law is very technical in favor of sureties, and justly so. However, we find no legal reason on which the judgment of our able brother of the trial bench can be sustained, though we have examined the questions with great care; for our knowledge of his fairness and ability as a judge makes us canvass our conclusions carefully, lest we be wrong, when we find ourselves disagreeing with him.                *Judgment reversed.*