### 5048.  COCA-COLA BOTTLING CO. v. ANDERSON.

The evidence did not authorize the verdict.
DECIDED NOVEMBER 25, 1913.

Complaint; from city court of Nashville.—Judge Cranford presiding. June 21, 1913.

*Cobb & Erwin, Hendricks & Christian,* for plaintiff in error.
*Alexander & Gary, Lovett & Murray,* contra.

POTTLE, J. This was an action upon two promissory notes, one for $250, executed January 7, 1911, and due July 7, 1911, and the other for $2,000, dated January 17, 1911, and due January 10, 1912. The defendant pleaded that the notes were given for 100

shares of stock in the plaintiff corporation, and that the consideration had failed, because the stock was worthless. It was further pleaded that the defendant was fraudulently induced to sign the notes upon the promise and guaranty of the plaintiff's agent that the stock would pay an annual dividend of 25 per cent., which would be credited upon the notes from year to year until they were paid; that the agent knew that such a dividend could not be made, and that the stock was worth no more than $10 per share—its par value; and by these false and fraudulent representations the defendant was induced to pay $22.50 per share. It was further pleaded that the agent agreed to sell stock only in Georgia, and, in violation of this agreement, placed some of the stock in Florida with citizens of that State. The agent represented to the defendant that all of the stock except about $10,000 had been subscribed, and that the plaintiff company was capitalized at $200,000. The defendant was ignorant of the value of the stock, and of the true condition of the company's affairs, and relied upon the representation made by the agent in reference to these matters. The company never declared the dividend as guaranteed by its agent, and he knowingly and fraudulently misled the defendant in reference to the value of the stock. It was further pleaded that in consideration of the notes the plaintiff agreed to issue and deliver to defendant 100 shares of stock, and no stock was ever issued and delivered to him.

From the evidence it appears that the plaintiff company acquired the exclusive right to bottle and sell Coca-Cola in certain territory in Illinois. The company was organized in 1906, with a capital stock of $50,000, which was subsequently increased to $200,000, of which $123,940 was subscribed for. On January 7, 1911, 8,845 shares had been sold. The par value of the stock was $10 per share. The company was organized and conducting its operations when the stock was sold to the defendant. In 1906 the company sold 37,864½ cases of Coca-Cola, and the sales steadily increased, reaching 67,021 cases in 1910, and 76,089½ cases in 1911. For lack of funds the business of the company has been retarded, but it is fairly inferable from the evidence that the enterprise can be operated at a profit to its stockholders. In January, 1911, the plaintiff sold stock to a number of citizens of Nashville, Georgia, and all but three of these purchasers have paid for their stock. After the execution of the notes sued on the stock sold to the de-

fendant was issued by the company and attached to the notes, to be delivered upon payment of the amount subscribed. According to the testimony for the defendant, the plaintiff's agent represented to him that the stock was worth $22.50 per share, but that its par value was only $10; that all of the stock except between $8,000 and $12,000 worth had been sold, that he had sold about all he was going to sell, and that he sold only to Georgia people. The agent said that the stock was selling at $22.50, but that it was really worth $100 per share, and that if the defendant would buy the stock it would pay him a dividend of .25 per cent. the first year. The defendant purchased the stock solely upon the representations of the plaintiff's agent, knew nothing about the value, and has never received any stock or any dividends, though the defendant could not be positive he was to receive the stock before his notes were paid. In April, 1911, the plaintiff's agent returned to Nashville and had a conference with the defendant and other purchasers. In the fall of 1911 the defendant became dissatisfied with his purchase, when he failed to receive the 25 per cent. dividend. On January 14, 1911, the defendant was notified by letter that the stock had been issued and attached to his notes, and would be delivered to him when paid for. On July 10, 1911, the defendant wrote to the plaintiff, requesting an extension for ninety days on the note due July 7. This extension was granted, and nothing further was heard from the defendant until November 29, 1911, when the plaintiff wrote to him, requesting payment of the $250 note. This note was not paid, and on January 2, 1912, the defendant was notified that the note for $2,000 would be due on January 10, and that payment of both notes would be required. The jury found for the defendant, and the case is here upon an exception to the overruling of the plaintiff's motion for a new trial, based solely upon the ground that the verdict is without evidence to support it.

It is a rule of this court, without exception, that if there is any evidence to support the verdict, the jury's finding will not be disturbed, unless some material error of law has been committed. However, a verdict which is wholly without evidence to support it is contrary to law and must be set aside. A careful reading of the evidence in the present case has convinced us that the plaintiff's exception is well taken. The alleged false representations of the

plaintiff's agent consisted in wilful misstatements in reference to the value of the stock, in a promise that it would pay a dividend of 25 per cent., and that the plaintiff would not sell any stock to non-residents of the State. The defendant failed to prove his plea that the stock was to be delivered to him upon the execution of his notes. He testified that he could not be positive this was the agreement, and it is undisputed that the stock was issued and attached to the notes, to be delivered on payment of the subscription. There is no evidence that any of the stock was sold for less than $22.50. The defendant knew that the par value of the stock was $10, and he knew also that its future market value depended upon the success of the enterprise. Value is mere matter of opinion, and the statement by the agent that at the time of the sale the stock was worth $22.50 or more per share, even if untrue, would not amount to such fraud as to avoid the sale. If this were true, no purchaser could be made to pay, if he could persuade a jury that the thing bought was not worth as much as the seller represented it to be. If the article sold be entirely worthless, the seller can not collect the purchase-price. The defendant complains that he should be let out of his purchase, because the seller's agent guaranteed that the stock would pay a dividend of 25 per cent. This was no part of the contract. The statute of frauds requires such a contract to be in writing. *Hightower* v. *Ansley*, 126 *Ga.* 8 (54 S. E. 739, 7 Ann. Cas. 927). Such a parol promise was therefore not enforceable, nor would it be ground for rescission. The defendant knew that this statement of the agent was mere speculation upon the success of the enterprise. It was the mere expression of an optimist. Sellers of stock in a corporation are usually sanguine of the success of the enterprise, and it is only by communicating their own optimism to a prospective purchaser that a sale can be made. The purchaser must take some chance. The law is not alone for his benefit; he must exercise some diligence and business judgment, and if the venture does not prove as successful as he anticipated, he ought not to be allowed to avoid payment merely because the seller persuaded him to guess wrong. The parties were dealing at arm's length. The purchaser took the chance of success or failure. If the enterprise had succeeded he would have been the beneficiary; and if it fails he must suffer the loss. If I sell a man a horse and represent it to be worth $250, the purchaser can not rescind merely because he afterwards concludes that the horse is worth only $150.

The agreement to sell only in Georgia was not a part of the written contract of sale, nor did the breach of it afford ground for rescission. It in no way lessened the value of the stock, nor affected any of the defendant's rights. Civil Code, § 4623. Besides, if all the stock had been sold in Georgia, it could have been assigned to citizens of other States, and the defendant knew that it was beyond the power of the corporation to keep the stock in the hands of Georgia citizens.

There is no evidence to show that the stock was not worth $22.50 at the time of the sale, nor was there any evidence at the trial to show that it had no value at that time. The corporation is a going concern. Success is temporarily retarded on account of lack of funds, but, from the evidence in the record, it is by no means a failure. The exclusive right to sell Coca-Cola in Chicago and vicinity ought to be and probably is a valuable franchise. The defendant is interested in it to the amount of his stock, and, from what appears in the record, the venture may yet prove as profitable as the seller's agent predicted. The defendant failed to sustain his plea of failure of consideration. See *McMillan* v. *First Nat. Bank of Valdosta*, 13 *Ga. App.* 23 (78 S. E. 734). Moreover, if any fraud was perpetrated upon the defendant he failed to move promptly. Civil Code, § 4305. He was promptly advised that the stock had been issued to him, and not until suit was brought did he offer to rescind. In the summer of 1911 he asked for and obtained an extension of his note for $250, though in the previous April he and others, becoming dissatisfied, had sent for the seller's agent, and conferred with him in reference to the purchase. *Tuttle* v. *Stovall*, 134 *Ga.* 325 (67 S. E. 806, 20 Ann. Cas. 168). There was no evidence to show that the representations made by Edwardy (the agent) were false and made for the purpose of cheating and defrauding the defendant.

There was no evidence to authorize the verdict, and the court erred in overruling the motion for a new trial.

*Judgment reversed.*