### 5923. SEAWRIGHT v. DICKSON.

1. A plea alleging that there was a total want of consideration for the note sued on; that it was executed in part payment for certain shares of stock sold to the maker by the payee, which, as the payee knew, at the time of the sale and of executing the note, was without market value and wholly worthless, and which has never since had any market value, and that the defendant obtained no benefit from the purchase of the stock and the plaintiff sustained no loss on account of the sale, is a sufficient plea of want of consideration, as against a general demurrer.
2. The court did not err in striking an amendment which set up new facts or a defense of which notice was not given by the original plea or answer, and which was not verified as required by the Civil Code, § 5640.

DECIDED JUNE 11, 1915.

Complaint; from city court of Atlanta—Judge H. M. Reid. June 19, 1914.

*T. J. Ripley,* for plaintiff in error.
*George Westmoreland,* contra.

· WADE, J.   J. D. Dickson brought suit against W. C. Seawright on a promissory note dated March 21, 1913, and due 30 days after date, for $700 principal, with interest after maturity and 10 per cent. attorney's fees.   In his petition he alleged, that, as collateral security for the payment of the note sued on, the defendant pledged 18 shares of stock in the Guarantee Trust & Banking Company. Attached to the petition was a copy of the note, which recited the pledge of these 18 shares as collateral security.   The defendant filed a plea admitting the execution of the note, but denying his indebtedness thereon, because the consideration for which it was given had totally failed, and because there was a total want of consideration.   The defendant further alleged, that the plaintiff practiced a fraud on him when the note was executed, for it was given, together with $200 cash, as the purchase-price for the 18 shares of stock referred to in the petition, which stock "was totally worthless when sold to the defendant by plaintiff, and plaintiff knew or ought to have known that the stock was worthless, and of no value in the market."   The defendant alleged further that he was not indebted to the plaintiff on the note sued upon, because "the 18 shares of bank stock sold defendant by plaintiff were utterly worthless when sold him and when the note was executed, and plaintiff knew the stock was worthless when he sold it to defendant, and the consideration of said note was the eighteen shares of stock alleged to be collateral security, and said stock was without any market value on the 21st day of March, 1913 [the date when the note was executed], and is still without any market value, and has been without any market value for and during the time the note was executed and at present time.   Defendant has obtained no benefit from the purchase of said stock, and defendant [plaintiff] has maintained [sustained] no loss on account of said contract."   The defendant prayed judgment for the $200 cash paid by him to the plaintiff as part of the purchase-price of the bank stock alleged to be worthless, and denied any indebtedness for attorney's fees, etc.   The note sued upon was dated March 21, 1913, and was due 30 days after date.   The suit was filed October 14, 1913, and the original plea was filed October 21, 1913.

On June 19, 1914, the case came on for trial, and the defendant filed an amendment to his plea, in which amendment he set out that the 18 shares of stock purchased by him from the plaintiff, for

which the note sued upon was given, did not in fact belong to the plaintiff at the time of the sale to him, but that one Miles was then the true owner thereof, and still actually owned the stock; and that Miles and the plaintiff had practiced a fraud on the defendant by selling to him the stock, which Miles knew was worthless, and knew he could not personally sell to the defendant; for which reason the plaintiff acted as go-between for Miles, in order to make the sale to the plaintiff and obtain money on the worthless stock; that Dickson and Miles conspired together to sell this worthless stock to the defendant, "and the stock was worthless and so known to be worthless by Miles, and Dickson had no interest in said stock," except his commission for making this sale for Miles; that "the stock was worthless, Miles knew it or ought to have known it at the time of its sale, Seawright [the defendant] did not know it, because a number of contracts were kept off the books by Miles, and Dickson kept from Seawright the knowledge of the ownership of stock, and the note was obtained by fraud, and the consideration of the note has failed entirely." This amendment was ordered filed and was filed as part of the record, subject to demurrer or motion to strike, and, on demurrer, the amendment was disallowed; and the original plea itself was likewise stricken on demurrer, on the ground that "it set up no legal defense."

The amendment offered, it is true, alleges fraud on the part of Miles and Dickson, but fails to indicate in what the particular fraud consisted. It is true that in the amendment it is alleged that Dickson and Miles conspired together to sell worthless stock to him, which they knew at the time to be worthless, but it is not alleged that in order to induce the defendant to purchase the stock, which he asserts was at the time of the purchase worthless, any misrepresentation was made by either Miles or Dickson; and in fact the only definite reason assigned for the conclusion that a conspiracy was formed between Miles and Dickson to perpetrate a fraud upon the defendant is that the stock sold to him was in fact the property of Miles, and not of Dickson, and that Dickson was acting merely as agent for Miles in effecting the transfer. How or in what way this would affect the validity of the transaction we are unable to discover from the pleadings, since it is not suggested that upon the payment of his note the defendant would be for this reason unable to obtain possession of the 18 shares of stock. The 4th par-

agraph of the amendment alleges that Seawright did not know at the time of the sale that the stock was worthless, "because a number of contracts were kept off the books by Miles, and Dickson kept from Seawright the knowledge of the ownership of the stock;" but what "contracts" or "books" are referred to, or what facts touching the value of the stock were concealed by keeping the contracts off the books, the plea does not indicate, and we are left to surmise. Besides, the order striking the proposed amendment simply recites that "on demurrer to this amendment, this amendment is disallowed and stricken," and it appears from inspection that the proposed amendment was not verified as required by section 5640 of the Civil Code, providing that where an amendment, offered after the time allowed for answer has expired, sets up any new facts or defense, notice of which was not given by the original plea or answer, it shall not be allowed, "unless at the time of filing such amended plea or answer containing the new matter he [the defendant] shall attach an affidavit that at the time of the filing the original plea or answer he did not omit the new facts or defense set out in the amended plea or answer for the purpose of delay, and that the amendment is not now offered for delay, or unless in the discretion of the court the circumstances of the case or substantial justice between the parties require that such amendment be allowed without attaching such affidavit." The record does not disclose on what ground the amendment was disallowed, and, irrespective of the objections already referred to, it may be that the trial judge rejected it because it was not verified as provided by section 5640. *Upchurch* v. *Nichols,* 15 *Ga. App.* 359 (83 S. E. 273) ; *Early* v. *Hampton,* 15 *Ga. App.* 95 (82 S. E. 669) ; *Edwards* v. *Boyd Co.,* 136 *Ga.* 738-739 (72 S. E. 34) ; *Benson* v. *Marietta Fertilizer Co.,* 139 *Ga.* 691 (77 S. E. 1125).

The original plea alleged, as already stated, that the 18 shares of bank stock were utterly worthless when sold to the defendant and when the note was executed by him, and that the plaintiff knew this fact, and also that the stock was then without any market value and it has not since had any market value, and that the defendant obtained no benefit from the purchase of the stock and the plaintiff suffered no loss on account of his contract of sale. The Civil Code, § 5675, is as follows: "Whenever an action shall be commenced at common law, founded upon any contract, the de-

fendant in such action may plead and give in evidence to the jury, upon the trial thereof, that the consideration upon which said contract was founded has totally or partially failed. Such plea shall only be pleaded in cases between the original parties to the contract, or their privies or assignees, whose title has been acquired with notice actual or constructive, or by operation of law." Section 4250 provides that "if the consideration, apparently good or valuable, fails either wholly or in part before the promise is executed, such failure may be pleaded in defense to the promise. If it be partial, an apportionment must be made according to the facts of each case." The suit in this case was based on a contract under seal, and section 4219 of the Civil Code declares that "a specialty is a contract under seal, and is considered by the law as entered into with more solemnity, and consequently of higher dignity, than ordinary simple contracts." It is said in section 4241 that consideration is essential to a contract which the law will enforce, and "in some cases a consideration is presumed, and an averment to the contrary will not be received. Such are generally contracts under seal," etc. The plea in this case alleges a total want of consideration, rather than a failure of consideration, for it appears therefrom that the stock, for the purchase-money of which the note sued upon was given, was not only worthless at the time the plea was filed, but was worthless when the sale was made and the note given therefor, so that the note was wholly without consideration at the time of its execution.

The expression in *Smith* v. *Smith,* 36 *Ga.* 184-190 (91 Am. D. 761), that "the solemnity of a sealed instrument imports consideration, or, to speak more accurately, it estops a covenantor from denying a consideration, except for fraud," appears to have been merely an obiter, and a different rule is recognized by the courts of this State at this time. Even in the older case of *Albertson* v. *Halloway,* 16 *Ga.* 377, it was held that "a plea of failure of consideration, without fraud, may be pleaded to a note which is a joint and several promise to pay by two, which purports to be over the hand and seal of the makers, and has a seal or scroll affixed to the name of one, the other signing with his own proper hand, as security." In that case the court said: "We believe that the rule, that a plea of failure of consideration can not be used as a defense to a specialty, applies to no other instrument, save such as were

known to the common law as specialties; as deeds, bonds and instruments executed with like solemnities of *sealing and delivery*. It has been common for courts to say that such defense can not be set up to *an instrument under seal*. But we think that these words were used, or should have been used, with reference to such instruments as were executed with the ceremonies necessary to specialties at common law." The reasoning of that opinion was criticised in *Sivell* v. *Hogan,* 119 *Ga.* 167-170 (46 S. E. 67), and Justice Cobb there said that the Supreme Court was not "prepared to adopt the reasoning upon which this decision [*Albertson* v. *Halloway,* supra] was founded, that the common-law rule related only to such instruments under seal as were known to the common law as specialties, there being no such thing at common law as a promissory note under seal. . . Our code defines a specialty to be a contract under seal. Civil Code, § 3634 [Civil Code of 1910, § 4219]. We are not, however, to be understood as definitely committing ourselves at this time to the proposition that even want of consideration can not be pleaded to a promissory note under seal, though this would seem to be true." In *Van Dyke* v. *Van Dyke,* 123 *Ga.* 686-690 (51 S. E. 582, 3 Ann. Cas. 978), it was said: "It is unnecessary to discuss the exact status of a sealed note. In *Albertson* v. *Halloway,* 16 *Ga.* 377, its nature was considered, and it was held that a plea of failure of consideration could be made to a suit based on it. In other cases there have been intimations that a presumption of a consideration arose from the presence of a seal, but that it might be rebutted. . . In *Sivell* v. *Hogan,* 119 *Ga.* 167-169-170 [supra], the opinion was strongly expressed, although no direct ruling was made, that a seal raises a conclusive presumption of the existence of a consideration at the time the contract was entered into, but not that it has not since failed, either wholly or partially; and accordingly that want of consideration can not be pleaded, but failure of consideration may be. Whether the presumption thus raised is disputable or conclusive, the fact of being under seal gives to the note a character which it would not have otherwise. Moreover, the statute of limitations in regard to a note under seal and one without a seal is not the same. . . Under the strict commercial law prevailing in some jurisdictions, a note under seal and payable to a named person or order is deemed not negotiable, but in this State it is treated as negotiable." It will be

observed that all that was said in that opinion as to whether or not want of consideration can be pleaded to a note under seal was, by the express declaration of the court, mere obiter.

In *Slaton* v. *Fowler,* 124 *Ga.* 955 (53 S. E. 567), it was said that "at common law, as a general rule, a seal imported a consideration, and a contract under seal was not open to attack on the ground that it was without consideration. Whether this rule applies to a promissory note under seal so as to prevent a plea of want of consideration, or whether the seal only raises a presumption of a consideration, which can be rebutted, has never been definitely decided in this State; but it has been held that failure of consideration could be pleaded to a note under seal." Later the point was expressly ruled upon by this court in the case of *Sims* v. *Scheussler,* 5 *Ga. App.* 850 (64 S. E. 99), where it was said that "either want of consideration or failure of consideration may generally be pleaded to a contract under seal;" and in another decision, handed down on the same day, Judge Powell gave an interesting and able discussion of the precise question, and the court held that "it is a good defense to an action on a negotiable promissory note under seal, in the hands of the original payee, that it was executed without any lawful consideration;" and also held that "in this State an equitable defense not involving affirmative relief or extraordinary remedy may be filed to any action at law in any of the courts. Hence, to an action in a city court on a note under seal, the defense of lack of consideration may be successfully pleaded." *Lacey* v. *Hutchinson,* 5 *Ga. App.* 865 (1, 5), 878 (64 S. E. 105). This ruling was approved in *Williams-Thompson Co.* v. *Williams,* 10 *Ga. App.* 251-253 (73 S. E. 409), where this court held that "at common law a release under seal conclusively imported a consideration, but this is not now true, as respects the American States generally (Williston-Wald's Pollock on Contracts, 813), or as respects Georgia in particular." The decision in *Lacey* v. *Hutchinson,* supra, was again referred to by this court in *Sasser* v. *McGovern,* 11 *Ga. App.* 88 (74 S. E. 797); and in *Strickland* v. *Farmers Supply Co.,* 14 *Ga. App.* 661 (82 S. E. 161), this court said that "the consideration of a promissory note may be a legitimate subject of inquiry though the note be under seal," and that "it is no longer an open question in this court" that the fact "that a promissory note, even though executed under seal, was ex-

ecuted without any lawful consideration is a good defense to an action on a negotiable promissory note in the hands of an original payee." It appears then that under the statute law of Georgia, a defendant may not only plead failure of consideration to a note under seal, but may also plead want of consideration to such an instrument.

The question remaining for determination is whether the original plea sufficiently set up a plea of total want of consideration to withstand the general demurrer thereto, bearing in mind that it is not absolutely essential to the validity of such a plea (under some of the rulings above cited) that fraud be alleged; for in this plea there is no specific allegation of any act of fraud, nor is there any attempt to allege such concealment on the part of Dickson as to the value of the stock sold to the defendant as might amount to fraud under the provisions of section 4114 of the Civil Code. It is true that the defendant asserts that the plaintiff "practiced a fraud on the defendant when he executed said note, in that the 18 shares of bank stock (the consideration of said note) was wholly worthless when sold to defendant by plaintiff, and plaintiff knew or ought to have known that this stock was worthless and of no value in the market;" but it does not appear that the defendant made any direct inquiry as to the value of the stock and that the plaintiff evaded the truth, or that any confidential relation existed between them whereby the defendant had the right to expect full communication of the facts from the plaintiff, or that the defendant was laboring under any delusion with respect to the property sold, "or the condition of the other party," and the plaintiff knew this and yet kept silence, or that the concealment was of intrinsic qualities, or that the actual value of the article could not, by the exercise of ordinary prudence and caution, have been discovered by the other party. The issue presented therefore, is whether, as against a general demurrer, a total want of consideration was sufficiently pleaded by the allegations that the stock purchased by the defendant, and for which he executed the note sued upon, was without market value and wholly worthless when sold to him by the plaintiff and when the note was executed, and that it ever since remained without any value, that the plaintiff, at the time of the sale, knew that it was wholly worthless, and that the defendant obtained no benefit from the purchase of said stock, and the plaintiff sus-

tained no loss on account of the contract alleged to be without consideration. As the defendant did not seek to show that a consideration originally valuable had become totally worthless, it was not incumbent upon him to show how or for what reason it had lost its value; he asserted simply that the stock was worthless; and since "stock," as the word is ordinarily used, means one share or more, or an interest great or small, in a corporation or company organized generally for the profit of the shareholders or stock-owners, and generally having a value on the market, or being at least saleable to some limited number of persons interested in corporations or stock companies of that particular character, an assertion that when the stock for which the note was given was sold to the defendant by the plaintiff, it was worthless and of no value in the market and that it was still without market value, and had never had any such value from the time it was purchased, is a sufficient plea of want of consideration, in the absence of a special demurrer requiring a further statement of fact to back up and sustain the allegation that the stock was worthless. If the consideration were some piece of machinery or an agricultural implement sold for a particular purpose, and the defendant desired to plead total failure of consideration, it would be necessary, of course, to allege how, in what particular, or why the object purchased was not reasonably suited for the purposes intended or the consideration had failed; but here, where the thing sold was an intangible interest in a corporation, a plea setting up that this interest, represented by certain shares of stock, was absolutely worthless and unsalable at the time the defendant gave his note therefor, and was still worthless and unsalable in the market, certainly alleged a want of consideration. As was said in *Pidcock* v. *Crouch*, 7 *Ga. App.* 299 (*2c*), 302 (66 S. E. 971), "Where a defendant sets up that the property purchased is wholly worthless, and that the consideration of the note given for the purchase-price has wholly failed, the plea is sufficiently definite as to the extent of the failure, and, if proved, would authorize a total abatement of the purchase-price."

The case of *Coca-Cola Bottling Co.* v. *Anderson*, 13 *Ga. App.* 772 (80 S. E. 32), is quite different from the present case on the facts. That case went to trial, and the evidence not only developed that the defendant had bought the stock in question from an agent upon his representations as to its future market value, which de-

pended upon the success of the enterprise, but it did not show that the stock was in fact worthless, even if it was not worth as much as the seller represented it to be. In the opinion it was said that the defendant knew that the statement of the agent as to the future value of the stock was a mere speculation upon the success of the enterprise, and that he took his chances when he purchased the stock; but, as also said in that opinion, "if the article sold be entirely worthless, the seller can not collect the purchase-price." In *McMillan* v. *First National Bank,* 13 *Ga. App.* 23 (78 S. E. 734), it was said, as to a note given for the purchase-price of mining stock: "In order to sustain a plea of failure of consideration . . [the purchaser] must show that the payee of the note acted in bad faith, that the stock was worthless at the time the note was given, and that the payee knew this fact when the sale was negotiated." In the present case the allegation is made that the payee knew, at the time that he sold the stock, that it was worthless; and it is alleged that by reason of the sale of this worthless stock to the defendant, when the plaintiff knew or ought to have known that it was worthless, he practiced a fraud on the defendant; in other words, acted in bad faith towards him. The plea appears, therefore, to come up to the measure prescribed in the *McMillan* case, supra. In the *Pidcock* case, supra, it was said that the plea, "having alleged that the stallion was wholly worthless, and that therefore the consideration had totally failed, was sufficiently definite. If only a partial failure of consideration had been set up, it would have been necessary that the plea should be more specific as to the extent of the failure, and as to the facts from which the jury should calculate the amount by which the purchase-price was to be abated."

Enough can be found in the original plea of the defendant in this case to make at least a clear and definite statement that the stock for which the note was given was altogether without value, and that the seller was aware of this fact at the time of the sale. What the proof may show and how the case may finally present itself is of course a matter which the future will alone develop. The court erred in sustaining the demurrer and striking the original plea.                          *Judgment reversed.*