DON JOHNSTON DRILLING CO., a corporation, Plaintiff in Error,

v.

George HOWARD, Defendant in Error.

DON JOHNSTON DRILLING CO., a corporation, Plaintiff in Error,

v.

Ralph MANAHAN, Defendant in Error.

No. 38320.

Supreme Court of Oklahoma.

Oct. 6, 1959.

Rehearing Denied Dec. 1, 1959.

Rainey, Flynn, Anderson & Welch, Oklahoma City, for plaintiff in error.

Brown, Darrough & Darrough, Oklahoma City, for defendants in error.

WILLIAMS, Vice Chief Justice.

This is an appeal from two judgments rendered on actions on notes, which actions, by stipulation, were consolidated for trial and appeal, with separate judgments to be rendered in each action. The fact situation in each case was identical except as to the amount involved. The parties will be referred to as they appeared in the trial court.

The Kingwood Oil Company, hereinafter referred to as Kingwood, was engaged in a general oil business, and in that connection it owned and operated three rotary drilling rigs. In March, 1950, Kingwood organized The Don Johnston Drilling Company, (defendant below) as a wholly owned subsidiary. In exchange for 3750 shares of the authorized 5625 shares, par value $100, of the new corporation, Kingwood transferred the three drilling rigs and other equipment. Four long-term employees who had formerly been employed by Kingwood in its drilling operations became the key personnel in the new drilling company.

On December 5, 1950, Kingwood entered into an agreement with Don Johnston Drilling Company, defendant, whereby defendant would acquire all the stock held by Kingwood. This was to be effected by Kingwood's assigning to defendant the 3750 shares of stock, a new certificate covering said shares to be issued to defendant. This new certificate was pledged to Kingwood as security for defendant's promissory note given for the purchase of said shares, and as additional security, defendant executed a chattel mortgage covering the drilling rigs and other equipment. This note in the amount of $393,221.61 was payable in monthly installments of $6,553.69, plus interest, over a period of 5 years, the final installment being payable December 6, 1956.

Defendant further agreed, in the contract, that:

"So long as any portion of the above-mentioned indebtedness is un-

paid, the Drilling Company shall not, without the written consent of Kingwood first obtained:

"'(a) Pay any dividend;

"'(b) Suffer or permit any change to occur in the ownership, management, directorate, or control of the Drilling Company;

"'(c) Increase the salaries of its officers or pay to them any bonus or other thing of value in excess of their respective salaries as of September 30, 1950.'"

The contract provided further safeguards to Kingwood in matters of monthly reports on the conduct of defendant's business, audits, etc. In addition, this contract provided that Don R. Johnston would be issued 30 shares of defendant's stock as compensation for negotiating this transaction.

Prior to this sale agreement, the four former employees of Kingwood, Don R. Johnston, George Howard, plaintiff, Ralph Manahan, plaintiff, and C. R. Vanhooser, upon learning that Kingwood's management was desirous of divesting itself from all drilling operations, worked together to acquire the Don R. Johnston Drilling Company. Their efforts resulted in the above agreement between defendant and Kingwood. They agreed that upon payment of the debt to Kingwood, only 54 shares of stock would be issued, of which 30 shares were issued to Don R. Johnston under the above contract, and 8 shares were to be issued to each of the others.

On December 20, 1950, the following written agreement was made:

"Stock Subscription Agreement

"This Agreement, Made this 20th day of December, 1950, between the Don Johnston Drilling Co., an Oklahoma Corporation, hereinafter referred to as 'Company' and George Howard, hereinafter referred to as 'Employee',

"Witnesseth: That,

"Whereas, under date of December 5, 1950, Company purchased from Kingwood Oil Company, 3,750 shares of the Common Stock of Company for $393,221.61 as evidenced by and according to the terms of a certain written Contract, promissory note (in the principal sum of $393,221.61 the final maturity of which is December 5, 1955, if all installments are paid as and when due) and Chattel Mortgage, all dated December 5, 1950, all of which instruments have been exhibited to and carefully examined by Employee and are incorporated herein by reference; and

"Whereas, other than the 3,750 shares of the Common Stock of Company issued to Company and pledged to Kingwood Oil Company to secure the aforesaid indebtedness, Don R. Johnston presently holds all the issued and outstanding capital stock of Company i. e. 30 shares of its Common Stock, except that Company is this date entering into identical Stock Subscription Agreements with two other employees of Company; and

"Whereas, Employee is desirous of acquiring approximately 15% of the capital stock of Company and Company, as an inducement to retain Employee in its employment, is willing that he do so upon the terms and conditions hereinafter set forth.

"Now, Therefore, for and in consideration of the mutual covenants and agreements herein contained, Company and Employee have agreed as follows:

"'1. Company offers for subscription and Employee subscribes and agrees to pay for 8 shares of the authorized but unissued Common Stock of Company at and for the price of $100.00 per share, that being the par and agreed fair market value of said stock on this date.

"'2. Employee agrees to pay for said stock by executing and delivering his negotiable promissory note in the principal sum of the subscription price,

bearing interest at 4% per annum, and payable to Company's order.

"'3. Title to the stock for which Employee has subscribed hereunder shall be held in Trust until the aforesaid indebtedness due Kingwood Oil Company has been fully paid or until December 5, 1957, whichever date first occurs. As soon as Employee has executed and delivered said promissory note, Company shall issue a certificate for the 8 shares subscribed by Employee hereunder to L. K. Mac-Farland, Trustee under Stock Subscription Agreement between Don Johnston Drilling Co. and George Howard dated December 20, 1950. Company may at any time, designate a substitute or successor Trustee and re-issue such stock to such substitute or successor Trustee provided it gives Employee written notice thereof. The said Trustee shall vote the stock for which Employee has subscribed hereunder until the aforesaid indebtedness due Kingwood Oil Company has been fully paid or until December 5, 1957, whichever date first occurs. Employee shall have no rights as a stockholder of Company until the aforesaid indebtedness due Kingwood Oil Company has been fully paid or until December 5, 1957, whichever date first occurs, at which time the stock subscribed for hereunder shall be transferred to Employee on Company's stock record books and a proper certificate duly issued to Employee.

"'4. If, at any time between (i) the date hereof and (ii) the date the aforesaid indebtedness due Kingwood Oil Company has been fully paid or December 5, 1957, whichever date first occurs, Employee should voluntarily leave the employment of the Company or die or be discharged (irrespective of the cause of discharge) Company shall have an absolute and irrevocable right and option to purchase from Employee all the stock subscribed for hereunder * * *.

"'5. Employee may not assign or otherwise transfer his rights under the Agreement or the stock subscribed for hereunder or any interest herein except that this covenant shall not prevent Employee from bequeathing his interest therein except that this covenant shall not prevent Employee from bequeathing his interest in the stock subscribed for hereunder or such stock passing to his heirs and personal representatives under the Laws of Succession of the State of Oklahoma subject, however, to Company's aforesaid option to purchase same.'"

An identical agreement was made with the other plaintiff, Ralph Manahan.

Pursuant to this agreement plaintiff executed the following promissory note:

"$800.00     Oklahoma City, Oklahoma
                         February 1, 1951.

"On December 5, 1955, for value received, I, we, or either of us promise to pay to the order of Don Johnston Drilling Co.

"Eight Hundred and No/100—Dollars at Oklahoma City, Oklahoma, without defalcation or discount with interest at the rate of 4 per cent, per annum, payable annually."

The affairs of defendant drilling company prospered through joint efforts of these four men, and each payment on the debt was made in full and on time. In February, 1954, approximately three years after this arrangement was made, and after three-fifths of the debt had been paid, Don R. Johnston, president of defendant, discharged each of the plaintiffs.

Defendant exercised its option in the above "Subscription Agreement", and the following settlement was made with each of the plaintiffs separately:

"Contract

"This Agreement, made and entered into this day and year last below written by and between Don Johnston Drilling Company, a corporation, here-

in designated as Johnston and George Howard, herein designated as Howard;

"Witnesseth:

"Whereas, Howard's Employment by Johnston was terminated on and effective February 5, 1954, and whereas Howard was a participant in the Don Johnston's Profit Sharing Plan and has made application for lump sum payment of all amounts due him under the terms of the said Don Johnston's Profit Sharing Plan, as amended, and,

"Whereas, Howard is the equitable or beneficial owner of eight (8) shares of stock in Johnston, held in the name of L. K. MacFarland, Trustee, all under provisions of Stock Subscription Agreement made by and between Howard and Johnston dated December 20, 1950, and Johnston under and according to the provisions of Paragraph 4 of such Stock Subscription Agreement has duly exercised its option to purchase said eight (8) shares of stock belonging to Howard as aforesaid, and,

"Whereas, pursuant to Paragraph 4 of such Stock Subscription Agreement, the book value of said stock as of February 1, 1954 (less producing oil and gas properties owned by Johnston) has been determined and agreed upon as $30,421.33 and Howard has requested that such sum be paid $500.00 in cash and the balance in a note payable and due according to the terms of said Stock Subscription Agreement and Johnston has agreed thereto, and,

"Whereas, * * * (the parties have agreed with reference to producing oil and gas leases) and,

"Whereas, Howard has requested a salary bonus equal to one month's salary and Johnston has offered a salary bonus in the amount of $725.05, less withholding and Social Security taxes, or a net sum of $617.35 and the parties have agreed to such latter amount, and that payment of same will satisfy all salary claims of Howard, and

"Whereas, parties desire to provide for directions to L. K. MacFarland, Trustee, relative to transfer of the eight (8) shares of stock held by such Trustee for Howard as aforesaid, and,

"Whereas, the aforesaid matter represents any and all claims of every kind and character, which Howard has against Johnston and/or Don R. Johnston personally, and,

"Whereas, Howard is indebted to Johnston on open account in the amount of $1,423.06, and the parties desire to determine the time, manner, and method of the payment of such indebtedness;

"Now, Therefore, for and in consideration of One Dollar ($1.00) in hand paid by each of the parties hereto, and in consideration of the covenants and the agreements herein set forth to be kept and performed by parties hereto, said parties do hereby agree as follows:

"1. L. K. MacFarland shall transfer and assign to Johnston immediately and effective February 1, 1954, the eight (8) shares of stock held by MacFarland for Howard and as compensation therefor, Johnston shall:

"'a. Pay Howard $500.00 in cash and execute a note in the amount of $29,921.33 in form and payable as in Exhibit 'A' attached hereto and made a part hereof.

"'b. Assign to Howard without warranty of title, except as against its own acts, $\frac{8}{64}$ interest in and to all producing oil and gas leases and minerals owned by Johnston on February 1, 1954, with production therefrom (or cash equivalent thereto) from February 1, 1954, less a pro rata part of the operating expense of the leaseholds involved, since February 1, 1954, except that there shall be no charge for dry holes drilled on such properties since February 1, 1954, to date hereof.'

"The parties agree that L. K. MacFarland, upon assignment of such stock

will have fully discharged his duties as Trustee in good faith towards each of the parties hereto.

" '2. Johnston, through its officers and agents, shall use its office to procure the payment to Howard in a lump sum of all amounts due him under the Don Johnston Profit Sharing Plan, which amount the parties agree in the sum of $1,728.88.

" '3. Johnston shall pay Howard a salary bonus of $725.05 less withholding and Social Security taxes or a net sum of $617.35.

" '4. Upon the execution of this Agreement, Howard shall pay Johnston the sum of $500.00 in cash and give credit on the note from Johnston to Howard, hereinabove described, the sum of $923.06, thereby retiring the indebtedness of Howard to Johnston on open account in the amount of $1,423.-06.

" 'For the same consideration herein expressed, Johnston and Howard do hereby agree that this instrument settles all differences of claims of any kind, type or character now or heretofore existing by Johnston against Howard or by Howard against Johnston, the Don Johnston Profit Sharing Plan and/or Don R. Johnston, subject to the covenants and provisions of this Agreement, or which could or may arise by virtue of the relation of any of such parties, and particularly with respect to the matters and things described herein, except that there is a note presently in existence from Howard to Johnston, dated February 1, 1951, in the amount of $800.00, with interest thereon at the rate of four per cent (4%) per annum, payable December 5, 1955, which note shall continue in full force and effect, due and payable according to the terms thereof, and shall not be affected by the terms of this Agreement * * *'

"Promissory Note

"On or before December 5, 1957, or upon the date when indebtedness due Kingwood Oil Company by payor is completely paid and discharged (being that debt created by contract and promissory note between payor and Kingwood Oil Company, dated December 5, 1950, and in principal amount of $393,-221.61), whichever date first occurs, for value received and in compliance with provisions of Paragraph 4 of Stock Subscription Agreement between payor and payee dated December 20, 1950, after exercise of option to acquire stock of payee by payor herein, Don Johnston Drilling Company, a corporation, promises to pay to George Howard, the sum of $29,920.33 without interest until maturity, and six per cent per annum after maturity until paid.

"Dated this 13 day of July, 1954."

Nothing further transpired until April 16, 1956, approximately 8 months before defendant's notes would mature, defendant notified plaintiffs that it was cancelling all of the above agreements with plaintiffs on advice of counsel that the whole transaction was void as being in violation of the Oklahoma Constitution and Statutes.

The debt owing to Kingwood by defendant has been paid in full and the chattel mortgage released of record.

Plaintiffs filed the actions below seeking judgment on the defendant's notes. Judgments for plaintiffs. Defendant appeals from both judgments.

Defendant presents three assignments of error:

"First Proposition

"The agreement of December 20, 1950, purporting to be a "Stock Subscription Agreement" and the stock issued pursuant thereto were wholly illegal, void and contrary to public policy under the Constitution and statutes of the State of Oklahoma.

"Second Proposition

"The contract of June 28, 1954, was illegal, void and contrary to public policy because (a) it sought to carry out the illegal and void 'Stock Subscrip-

tion Agreement' and (b) the giving of an unsecured note by defendant as consideration for purchase of its own shares violated the Business Corporation Act of the State of Oklahoma.

"Third Proposition

"The lower court had no power or authority to enforce contracts which were illegal, void and contrary to the public policy of the State of Oklahoma."

Article IX, § 39 of The Oklahoma Constitution is as follows:

"No corporation shall issue stock except for money, labor done, or property actually received to the amount of the par value thereof, and all fictitious increase of stock or indebtedness shall be void, and the Legislature shall prescribe the necessary regulations to prevent the issue of fictitious stock or indebtedness. The stock and bonded indebtedness of corporations shall not be increased except in pursuance of general law, nor without the consent of the persons holding the larger amount in value of the stock first obtained at a meeting to be held after thirty days' notice given in pursuance of law."

The word "stock" has been defined broadly as the sum of all the rights and duties of shareholders, but generally the term is used in a more narrow sense, as for example, to designate capital stock, capital, shares of stock, or certificates of stock. 18 C.J.S. Corporations § 192.

"Stock", as ordinarily used, means one share or more or an interest in a corporation. Seawright v. Dickson, 16 Ga.App. 436, 85 S.E. 625.

■ As used in the above section of The Oklahoma Constitution, the word "stock" is used synonymously with "shares of stock" or "shares."

The Business Corporation Act, 18 O.S. 1951 § 1.2(10) defines "share" to mean one of the units into which are divided the aggregate rights of the shareholders to participate in the control, the profits and surplus, and/or distribution of the assets of a corporation.

Defendant contends that the above "Subscription Agreement" is void for the reason that stock, or shares, were issued for consideration of a promissory note, which we held in Southwestern Tank Co. v. Morrow, 115 Okl. 97, 241 P. 1097, does not constitute "property actually received", and such stock, being issued without defendant's receiving the par value thereof, is void under the quoted constitutional provision.

This conclusion must be based on two assumptions, the first of which is that the stock, or shares, were "issued" when the stock, or share, certificates were delivered to the trustee in trust for plaintiffs.

■ "Share certificate" or "certificate of shares" as defined by 18 O.S.1951 § 1.2(20) means "a written instrument signed by the proper corporate officers, as required by this Act, evidencing that the person therein named is the registered owner of the share or shares therein described." This certificate is only a muniment of title.

■ Ownership of "shares", i. e. the right to participate in the control, management, the profits and surplus, and/or the distribution of the assets, of a corporation is a contractual relationship.

■ A share of stock is created by the joint action of the corporation and the shareholder. When a corporation has agreed that a person shall be entitled to a certain number of shares for a consideration permitted by law and executed by the person, those shares come into existence and are owned by him. United States Radiator Corp. v. State, 208 N.Y. 144, 101 N.E. 783, 46 L.R.A.,N.S., 585.

The Supreme Court of Texas, in early cases held that giving notes for stock does not violate constitutional or statutory provisions prohibiting "issuance" of stock except for money paid, etc., where the stock was not to be delivered until the notes were paid, since there is no "issuance" without delivery of a certificate. Smith v. McAdams, Tex.Civ.App., 206 S.W. 955; Zapp

v. Spreckels, Tex.Civ.App., 204 S.W. 786. Later cases, reversing these earlier decisions, held that stock cannot be issued for notes; although the stock is not delivered, where the subscriber is paid the dividends and otherwise recognized as a stockholder. Pruett v. Cattlemen's Trust Co., Tex.Com. App., 222 S.W. 533; 184 S.W. 716. The prohibition applies not only where a certificate is issued (delivered to stockholder) but also "to prohibit the exercise by the subscriber of the rights of a stockholder and the recognition on the part of the corporation of such rights" where no certificate is issued on the giving of the note. Turner v. Cattlemen's Trust Co., Tex.Com.App., 215 S.W. 831, 833.

In determining when shares are "issued", the Supreme Court of California, in People v. Beber, 104 Cal.App.2d 359, 231 P.2d 516, 522, said:

"The issuance of shares of stock of a corporation means the act or contract of the corporation by which shares become vested in a person as a member or stockholder. Blythe v. Doheny, 9 Cir., 73 F.2d 799, 803; approved in Domestic and Foreign Petroleum Co. v. Long, 4 Cal.2d 547, 554, 51 P.2d 73. The time when a share of stock originally comes into existence, and is deemed issued, is controlled by the intent of the parties and is ascertained by examining the contract which they have executed concerning such issue. See Robbins v. Pacific Eastern Corp., 8 Cal.2d 241, 269–270, 274–275, 65 P.2d 42; Hertz-Drivurself Stations v. Ritter, 9 Cir., 91 F.2d 539, 541. In the Hertz and Robbins cases, it was found, in accordance with the intent of the parties, that title to the shares did not pass until delivery of the certificates. Upon the other hand, in Mitchell v. Beckman, 64 Cal. 117, 28 P. 110, it was found, upon the basis of the contract there involved, that title to the stock passed even before payment of the consideration, the court saying: 'When the corporation has agreed that a person shall be entitled to a certain number of shares in its capital, to be paid for in a manner agreed upon and that person has agreed to take and pay for them accordingly, he becomes their owner by a valid contract made upon a valuable consideration.'"

In the present cases, the intention of the parties, as shown by the "Subscription Agreement", was that "Title to the stock for which Employee has subscribed hereunder shall be held in Trust until" and that "Employee shall have no rights as a stockholder of Company" (defendant) until "the debt to Kingwood was paid in full or December 5, 1957". By the terms of this agreement plaintiffs' shares, or rights, were not to come into existence nor any rights or privileges incident to such ownership to vest in plaintiffs until a future date.

The above "Subscription Agreement", therefore, is not void for the reason that no property was actually received to the amount of the par value thereof. The shares contemplated by the parties were still inchoate, and were not to come into existence and issue until a future date. It follows that no stock or shares were "issued" in violation of said constitutional prohibition.

The second assumption upon which defendant's argument is based is that this "Subscription Agreement" was a consummated or completed sale on the date of its execution. Such assumption is contrary to the terms of the agreement. The title to the stock or shares, and the rights of such ownership were not to become vested in plaintiffs until the debt to Kingwood was paid in full, the maturity date of which was December 5, 1956, or December 5, 1957. The note executed by plaintiffs pursuant to this agreement did not mature until said date, December 5, 1955. This "Subscription Agreement" was a wholly executory contract of sale. By its terms, the sale was to be consummated on or after December 5, 1955. Defendant exercised its option and rescinded and cancelled this sale agreement more than one year prior to that date.

■ To hold that the subscription agreement involved herein is void under our constitution provision, we would have to presume that plaintiffs, from the inception of these contracts, did not intend to pay their promissory notes, and that defendant intended to vest plaintiffs with the rights incidental to ownership of such shares without receiving the par value thereof. Where a contract is fairly open to two constructions, by one of which it would be lawful, and the other unlawful, the former must be adopted. Fairbanks, Morse & Co. v. City of Wagoner, 10 Cir., 81 F.2d 209. We therefore presume that plaintiffs and defendant intended to enter into a lawful contract.

■ Such subscription agreements, providing for payment of the subscription price is not contrary to public policy, but are specifically provided for by 18 O.S.1951 § 1.32, and 1.47.

■ Defendant further contends that the contract of June 24, 1954, set out above, was illegal in that defendant gave its unsecured note as consideration for the purchase of its own stock in violation of 18 O.S.1951 § 1.136. Title to these shares was not to become vested in plaintiffs, nor was the consideration therefor payable, by the terms of the subscription agreement, until a future date. Defendant, having exercised its option to rescind the contract of sale prior to such date, entered into this second contract. In view of the above conclusion that the subscription agreements were executory contracts of sale, this second contract could be no more than a settlement agreement by the parties of their rights upon the cancellation of the subscription agreement. Defendant's notes were given, not to purchase its own outstanding shares, but in settlement for cancellation of plaintiffs' rights to acquire such shares according to the terms of their original subscription agreement.

Defendant's contention that it was not purchasing its own shares out of earned surplus, as required by said statute, is not supported by evidence. It is true that at the date of the execution of defendant's note, it was still indebted to Kingwood, but this does not preclude the existence of an earned surplus, at that time, nor on the maturity date of said note. Again we must presume that the parties intended to enter into a lawful contract.

The third assignment of error is based upon the premise that these transactions are void and illegal. Further comment is unnecessary.

Judgment affirmed.

DAVISON, C. J., and HALLEY, BLACKBIRD, JACKSON, IRWIN and BERRY, JJ., concur.