### 1815. PIDCOCK *et al. v.* CROUCH & SON.

1. While it is permissible to show that a promissory note, signed by one or more persons and apparently complete, is not in fact complete, by reason of the fact that it has never been delivered from one party to the other as a finally completed contract, but that it was simply left in the possession of the payee until some additional person should sign it before it should become a completed contract, yet it is not permissible to show by parol that a note was delivered to the payee as a completed contract, but upon a promise upon his part that he would subsequently secure the signature of another person thereto, where the writing is silent as to any such promise on the payee's part.
2. Where a promissory note recites the consideration as "value received," it is permissible for the makers, when sued thereon by the original holders, to show that the consideration of the note was personal property, as to which the warranties made by the seller, either express or implied, have totally or partially failed.
(*a*) Under the rule allowing inconsistent pleas, the defendant may set up the existence and breach of both express and implied warranties; but on the trial, if an express warranty is satisfactorily proved, it has the effect of excluding implied warranties on the same subject.
(*b*) Where a defendant sets up that there were express warranties as to deficiencies not discoverable by superficial observation, and that these warranties failed and discovery was not made as to the particulars wherein the failure existed until after the property had been accepted, it is not necessary that he should allege a tender or return of the property, in order to plead this matter successfully in abatement to an action for the purchase-price. Where there is an express warranty, the purchaser will be held to have waived defects warranted against only so far as he knew of them at the time he accepted the property; and he is under no obligation to inspect the property in advance, for the purpose of ascertaining whether it is defective in these respects or not.
(*c*) Where a defendant sets up that the property purchased is wholly worthless, and that the consideration of the note given for the pur-

chase-price has wholly failed, the plea is sufficiently definite as to the extent of the failure, and, if proved, would authorize a total abatement of the purchase-price.

(d) Under a plea of total failure of consideration, the defendant may give evidence tending to show partial failure of consideration; but in the event the proof establishes that the failure was only partial, the defendant must furnish to the jury testimony of sufficient definiteness as to the degree of the failure, and as to the loss or damage resulting therefrom, to authorize the jury to estimate with reasonable certainty the amount by which the purchase-price is to be diminished or abated.

Complaint; from city court of Moultrie—Judge McKenzie. March 18, 1909.

Submitted May 21, 1909.—Decided January 21, 1910.

*W. F. Way,* for plaintiffs in error.    *Edwin L. Bryan,* contra.

POWELL, J.    J. Crouch & Son brought suit against Pidcock and the several other defendants named, upon a plain promissory note, payable to J. Crouch & Son or order, and reciting no other consideration than "value received." For plea the defendants admitted the execution of the note, but set up that the consideration had wholly and totally failed, for the reason that the consideration of the note was a stallion which the plaintiffs had sold to the defendants.    It is set up in the plea that the plaintiffs' agent proposed to sell them the stallion, representing that he was a full-blooded, thoroughbred, imported, German coach-stallion, and that the horse was well capable of performing the service for which he was intended,—namely the getting of colts; that as a matter of fact the defendants subsequently discovered that the representations made as to the horse being an imported stallion were untrue, as he was born and bred in Lafayette, Indiana; that he was utterly worthless, as he was incapable of begetting enough colts, although put to fertile mares, to pay the expense of keeping him; that the sterility of the stallion resulted from some innate physical defect; that the deficiencies set out above were unknown to the defendants at the time they bought and accepted the stallion, and they could not by the exercise of ordinary care have discovered them.    The defendants further pleaded that at the time they signed the note and closed the trade for the purchase of the horse, "it was distinctly understood and agreed by plaintiff's agent, with defendants, that one R. M. Morrison, who was and is a man of large means, was to sign said note and become liable therefor jointly with defendants; and that, notwithstanding such agreement upon the part of said

plaintiff, the plaintiffs then and there failed to procure the signature of said Morrison to said contract and note; and the individual liability of the defendants were and is materially increased." Originally the defendants had pleaded this defense in the following language: "Defendants further show that at the time they signed said note it was the distinct understanding between the defendants and W. E. Todd, representing said plaintiff, that before said trade was to be considered closed and said note effective, said Todd was to secure the signatures of R. M. Morrison and . . . . to said note, both of said parties being men of means, and thus the burden upon the defendants would have been lightened; but disregarding the contract thus made and the agreement thus entered into, the said W. E. Todd [the agent] took the note signed by defendants and left the county, and delivered the note to the plaintiffs herein." The court struck this plea as setting up no sufficient defense.

1. We will first dispose of the plea setting up that Morrison was also to sign the note. As originally pleaded, the transaction afforded a good defense, for the plea set up in substance that the note had never been delivered as a final embodiment of the contract; that it had been delivered to the plaintiff's agent in escrow, its final delivery to be complete only when Morrison had signed. As against original holders of the paper, this is a good defense. *Heitmann* v. *Commercial Bank*, 6 *Ga. App.* 584 (65 S. E. 590); *American Jobbing Association* v. *Register*, 5 *Ga. App.* 543 (63 S. E. 599). However, the defendants, by amendment, struck this, and set up not that the contract was to be incomplete and the note to be held in escrow until Morrison signed it, but that, though the trade was closed by the note, there was a promise on the agent's part to secure the signature of Morrison; and this is merely to plead a promise inconsistent with the writing. In the *Heitmann* case, supra, the distinction is drawn between these two very similar transactions. The court did not err in striking this portion of the plea as amended, though he would have erred in striking this portion of the defense as originally pleaded.

2. We think, however, that the other defense set up,—the defense of total failure of consideration,—was good. This plea set up nothing variant from any recital of the note. This is an entirely different case from *Holcomb* v. *Cable Co.*, 119 *Ga.* 466 (46 S. E. 671), and *Moultrie Repair Co.* v. *Hill*, 120 *Ga.* 730 (48 S. E.

143), and all that similar line of cases in which it is held that where the writing sued on expressly states that the consideration of the note is a particular described piece of property as to which certain specific, express warranties are made, it is not permissible to plead implied warranties as to the same matter, or to plead oral representations at variance with or additional to the written statements made in the instrument before the court. The note or contract sued on being silent as to the warranties, it is permissible for the defendant to set up the existence and breach of either express or implied warranties; indeed, under the rule allowing inconsistent and contradictory defenses, he might set up by separate pleas the existence and the failure of both express and implied warranties; though if the proof on the trial established the existence of an express warranty, this would shut off all inquiry as to the breach of any implied warranty on the same subject. In this case, however, the defendants pleaded the existence and breach of an express warranty. "A breach of warranty, express or implied, does not annul the sale if executed, but gives the purchaser a right to damages. It may be pleaded in abatement of the purchase-money." Civil Code, §3556. In such cases, an offer to return the property is not necessary to the maintenance of the defense. It is only where the purchaser elects to rescind that tender or return of the property is necessary. The plea in this case, having alleged that the stallion was wholly worthless, and that therefore the consideration had totally failed, was sufficiently definite. If only a partial failure of consideration had been set up, it would have been necessary that the plea should be more specific as to the extent of the failure, and as to the facts from which the jury should calculate the amount by which the purchase-price was to be abated. The rule is, however, that a defendant may plead total failure of consideration, and under it submit proof of a partial failure; but if the proof does not establish a total failure, the defendant must then introduce enough proof to show how far the consideration has failed and how much loss has been occasioned by the failure, to justify the jury in fixing upon some definite amount, before there can be any reduction in the verdict from the full sum stated in the note. We do not mean to say that this proof must establish the damage with arithmetical accuracy, but there must be such proof as to furnish a reasonable basis for the action of the jury when it

comes to the question of abating the purchase. We think, there-
fore, that the court erred in striking this portion of the defense.

*Judgment reversed.*