12000. LYON *v.* WILLIAMS PATENT CRUSHER & PULVERIZER Cc.

HILL, J. 1. The bill of exceptions was not subject to dismissal for any of the reasons assigned. The assignments of error were sufficient to give this court jurisdiction. *Lyndon* v. *Ga. Ry. & El. Co.*, 129 *Ga.* 354 (4) (58 S. E. 1047); *Mock* v. *Waters*, 6 *Ga. App.* 608 (1) (65 S. E. 579); *Tinsley* v. *Gullett Gin Co.*, 21 *Ga. App.* 512 (1) (94 S. E. 892).

2. The answer as amended did not allege facts which would legally excuse the defendant from liability on the contract because he signed it without knowledge of its contents. *Georgia Medicine Co.* v. *Hyman*, 117 *Ga.* 851 (45 S. E. 238).

3. The contract of sale of the machine provided for thirty days trial and gave the defendant the right to reject it if it did not do a stated amount of work after he had operated it under the seller's instructions at a specified speed, under load, for a specified number of days, and provided further for certain notice to the seller of the failure of the machine to do properly the work specified, and that the seller should have the right to make changes in the machine, and it was provided how the right of rejection should be exercised. There was an express warranty of the workmanlike manner of the manufacture of the machine. The title to the machine was to remain in the seller during the trial period. The plea of the defendant not showing full compliance with the conditions to which he agreed and upon which his right to

reject the machine depended, the court did not err in sustaining the demurrer and striking the plea. *Rockmart Brick & Slate Co.* v. *Williams Patent Crusher &c. Co.*, 143 *Ga.* 552 (85 S. E. 855).

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*

DECIDED MAY 2, 1921.

Complaint; from city court of Leesburg — Judge Martin. October 18, 1920.

1. The motion to dismiss the writ of error was upon the grounds: (1) There is no sufficient assignment of error in the bill of exceptions to authorize this court to entertain jurisdiction of the writ of error. (2) There is no valid and legal assignment of error. (3) There is no proper exception to any final judgment. (4) There is no proper assignment of error upon any final judgment. (5) The bill of exceptions does not specify plainly the decision complained of and the alleged error, as is required by the Civil Code, § 6139.

From the bill of exceptions it appears that the court sustained a demurrer to the defendant's answer as amended and struck it, and that the defendant filed exceptions pendente lite to this judgment, and he " assigns said ruling, order, and judgment as error, and for cause of error says that the court should have overruled said demurrer upon each and every ground therein set forth, and permitted said answer as amended to remain of file, for the reason that the same set forth a legal defense to said petition." As to the final judgment the bill of exceptions says: " The answer as amended having been previously stricken on demurrer, a verdict and judgment was entered against the defendant for the full amount sued for, as by default, thus making a final disposition of said cause; which verdict and judgment of the court was error, because the defendant had and filed a good and legal defense to said suit and should have been permitted to have proven the allegations of his answer which had been stricken on demurrer as aforesaid."

2, 3. The action was against J. W. Lyon upon two promissory notes signed by him, payable to Williams Patent Crusher & Pulverizer Company, for $570 each, dated November 16, 1918, and alleged to have been executed in pursuance of and under the terms and conditions of a certain contract of sale of a " mill " described therein. In the defendant's answer as amended it was alleged: Some time prior to November 16, 1918, C. R. McGehee, the agent

and representative of the plaintiff, sold to defendant the mill described, for $2,280, when defendant accepted the proposition of sale as set forth in a contract signed with the plaintiff, McGehee acting for the plaintiff, in which proposition (a copy of which was attached to the answer) the plaintiff warranted that the said machine would crush corn, cob, shuck, velvet beans, etc., to an approximate capacity of 2,000 to 5,000 pounds per hour through a ¾-inch cage, so as to pass a mesh sieve. At the bottom of this proposition is an acceptance by the defendant which appears to be on December 20, 1918, when in fact it was signed the day the order was given, which was some time prior to the giving of the notes or the shipping of the machinery. This proposition was executed in duplicate and delivered to the agent of the plaintiff aforesaid for the purpose of ratification by the plaintiff, with the promise that when this was done one of the copies of said proposition would be returned to the defendant. The plaintiff has failed to furnish the defendant with a duplicate in compliance with the promise. The circumstances under which the proposition or offer for sale was executed by defendant were as follows: Said agent had discussed the terms of the proposed sale, and defendant did not know that he would be required to sign the written contract. It was at night and the agent was preparing to catch a train out of Leesburg, and it was only about ten minutes before train time when defendant learned that the said agent wanted a signed order. He had no opportunity to read the same, and the agent assured him that the duplicate would be forthcoming immediately. Said agent did not live in Leesburg, Ga., but defendant was a resident of said town. Said agent, under the circumstances set forth, carried both of said contracts off with him on said train. Defendant never saw the contract or proposition again until the same was exhibited in court, when the plaintiff attached a copy of the same to his petition by way of amendment. On or about the 16th of November, 1918, there was presented to defendant by the Bank of Leesburg a sight draft for $570, attached to which were three promissory notes, each for the sum of $570, two of which were attached to the plaintiff's petition, which notes were signed by defendant, payable to the plaintiff; said notes being 4, 8, and 12 months after date. The said draft was paid when the defendant received the bill of lading and secured from the railroad company said property

upon the payment of the freight charges, and within 10 days thereafter he installed said machinery upon a proper foundation and in a workmanlike and skillful manner. After its installation defendant began to operate the same, and before the expiration of 30 days from said installation he undertook to crush corn, cob, shucks, and velvet beans, and the said machine would not and did not crush more than 500 pounds of velvet beans per hour, or 600 pounds of corn per hour, through a $\frac{3}{4}$-inch cage, when operated as provided in the contract of sale on trial, or proposition. Defendant immediately notified in writing the plaintiff that said machine would not crush 30 per cent. of the warranted capacity, whereupon the plaintiff advised defendant, after some negotiations that they would send a different cage, thus hoping to remedy the trouble as to the quantity to be crushed, and they did send said cage with which to make a change. It was installed according to instructions, and the said machine still failed to crush to the capacity guaranteed as aforesaid, and failed to increase the quantity of production over that of the original machine. Defendant thoroughly tested and tried said machine, trying to get it to produce the quantity guaranteed as aforesaid. It was operated in a skillful manner and failed to perform as hereinbefore set forth. Whereupon defendant again notified the plaintiffs in writing that the machinery would not produce results in crushing the quantity of material as aforesaid and as guaranteed in said contract, and in reply the plaintiffs promised in writing that they would send one of their representatives to Leesburg, Ga., to put the machine in a condition to perform the services guaranteed as hereinbefore set out. The plaintiffs delayed sending their representative as promised from time to time, and have failed to send their representative, or to put the machine in order, where it would perform the services guaranteed as to the quantity it would crush per hour. Defendant purchased said machine for the purpose of manufacturing feeds by crushing corn, cob, shuck, velvet beans, etc., for the market, which was known to plaintiff, and in order to make the machine profitable it would have to crush the quantity guaranteed as aforesaid. Defendant was compelled to abandon the operation of said machine because of its failure to produce the quantity guaranteed. He so notified plaintiff and offered to return the machine. The machine was totally worthless to defendant by

reason of the breach of the express warranty as hereinbefore set out, and plaintiff has become indebted to him in the original amount paid, $570, and for freight, express, and installation of the machine, in sums stated. Defendant has demanded of plaintiff a return of the notes and of the amount paid on the machine.

It was alleged also that the plaintiff perpetrated a fraud on the defendant in that the plaintiff knew that the machinery would not crush the guaranteed capacity, and had him execute the contract with no intention of returning it to him, but with the intention of defrauding and misleading him.

The contract referred to in the pleadings was in the form of a proposal addressed to J. W. Lyon, Leesburg, Ga., followed by an acceptance signed by him, and was headed " Contract of sale on trial." The plaintiff proposed therein to furnish to the defendant, " f. o. b. St. Louis, Mo., on trial," a described mill, for the price of $2,280, on stated terms, and guaranteed the machine " to be manufactured in a workmanlike manner." The writing continued as follows: "The above proposition is made upon the following conditions: By the acceptance of this proposition you agree that, within 10 days after you have received the machinery, you will install the same in your plant located at Leesburg, Ga., according to our instructions, upon a proper foundation to be provided by you; that you will operate the machine according to our instructions and at a speed, under a load of 2,800 R. P. M. as per No. 5 on the other side, for a period of 30 consecutive days immediately following said period allowed for installation; that, if the said machine should not crush corn, cob, shuck, velvet beans, etc., to an approximate cap. tons of 2,000 to 5,000 pounds per hour through 3/4-inch cage, so as to pass a mesh sieve when so operated, you will immediately notify us of the fact, and we are to have the privilege of making changes in the machine, if we desire, forwarding any substituted or additional parts to you, upon which you are to pay the freight. After completion of the changes, if any are made by us, you are to have a further period of —— days to try the machine. Should the same not have the capacity to crush to the fineness mentioned above, you are to have the right to reject the machine, providing that on or before the day of expiration of the first trial period named above, or, in the event of changes by us, then, on or before the day of expiration of said additional

trial period, you notify us in writing of such rejection, and place the machine and all appliances furnished you therewith on board car at your station, in as good condition as when received by you, less natural wear and tear, but not exceeding damages by fire or the elements, billing the machine to us, forwarding the bill of lading, and paying freight charges both ways; otherwise, the machine is to be considered accepted. Upon rejection and return of the machine within the time and manner aforesaid, we will refund any advance payments made by you upon the purchase price. Title to the machinery will remain in us during the trial period. Upon acceptance of the machinery by you, you are to secure the deferred payments by chattel mortgage, conditional sale contract, lease, or other instrument which, under the laws of your state, will secure us in a lien on said machinery for such deferred payments. [Here followed provisions as to insurance, expense of installation, etc.] The trial period shall not be extended except by agreement by writing. It is understood that there are no guaranties, express or implied, except the particular guaranty hereinabove made. The machine is to be shipped at once after receipt by us of your acceptance of this proposition, unless we should be delayed by strikes, breakdowns, or other unforeseen causes." (Signed on the part of the plaintiff by C. R. McGhee.) "We hereby accept the foregoing proposition of sale, this the 20th day of December, 1918, and agree to fulfill the terms thereof." Signed: J. W. Lyon.

In the judgment sustaining the demurrer to the answer the trial judge said: " I am of the opinion that the amended answer does not allege facts which in law justify or excuse defendant's ignorance of the terms of plaintiff's written offer to sell the machine. Defendant accepted this offer in writing; it became a binding contract on both parties from that time, and plaintiff was bound to ship the machine when this acceptance was communicated to it. It does not purport to have been executed in duplicate; nor is a contractual obligation dependent upon any further ratification by the seller. As I construe the contract, it contains simply a warranty that the machine was manufactured in a workmanlike manner; all other warranties, express or implied, are expressly excluded from the contract of sale. The clause of the contract upon which the defendant predicates his plea of breach of warranty, or failure of consideration, I do not construe to be a warranty at

all; I do not understand this clause to be a representation or undertaking on the part of plaintiff that the machine would function in any designated way. This clause merely provides for a trial period of 30 days; it gives the defendant the right to reject the machine after he has operated the same under seller's instruction and at a speed under load of 2,800 R. P. M. for 30 consecutive days, if it did not crush the stated amount to certain fineness; it also provides how the right of rejection should be exercised. During this period title remained in the seller. It was expressly agreed that if the machine was not rejected in the way designated, the machine was considered accepted. Before defendant can insist on his right to reject, he must show full compliance with the conditions to which he has agreed and upon which that right depends; the plea does not do this. Taking this view of the questions of law raised by the plaintiff's demurrer to the defendant's answer as amended, I feel constrained to sustain the demurrer."

*Wallis & Fort, R. R. Forrester,* for plaintiff in error, cited: 7 *Ga. App.* 299(2 *b*), (2 *c*); 2 *Ga. App.* 52; 13 *Ga. App.* 154, and cit.; 5 *Ga. App.* 344; 6 *Ga. App.* 848(1, 2); 21 *Ga. App.* 717.

*Peacock & Gardner, George B. Cowart,* contra, cited: 112 Ga. 319; 117 *Ga.* 851; 119 *Ga.* 6; 122 *Ga.* 802; 124 *Ga.* 1045; 127 *Ga.* 735; 16 *Ga. App.* 300, and cit.; Civil Code (1910), § 4135; 136 *Ga.* 754-5, and cit.; 104 *Ga.* 205; 126 *Ga.* 672; 116 *Ga.* 445; 129 *Ga.* 314(1, 2); 94 *Ga.* 482(1); 25 *Ga. App.* 354.