33036. ALPHARETTA FEED & POULTRY COMPANY INC. *v.* COCKE.

DECIDED DECEMBER 4, 1950.

*Marvin G. Russell,* for plaintiff in error.

*A. C. Latimer, Hamilton Lokey, Edward L. Savell,* contra.

MacIntyre, P.J.   (After stating the foregoing facts.)  ■ The defendant in error moved to dismiss the bill of exceptions on the ground that it is too vague, indefinite and general to present a question for the determination of this court, since the order of the trial court was to the effect that the demurrers of the plaintiff to the defendant's amended answer were sustained, the answer and amendment stricken, and judgment rendered for the plaintiff as a judgment by default.  This order was a final disposition of the cause, and was therefore properly assigned as error in the bill of exceptions.  See Code (Ann. Supp.), § 6-701.  "Where a demurrer is filed and overruled, an exception to the judgment overruling the same, stating that such a judgment was erroneous and that the same was excepted to and is now excepted to and error assigned thereon, is sufficiently definite, the demurrer itself appearing in the record."  *Toomey* v. *Read & Gresham,* 133 *Ga.* 855 (1) (67 S. E. 100).  "Where a bill of exceptions recites that the court sustained a general demurrer and further states, 'To this ruling sustaining the general demurrer, plaintiff excepted and now excepts, and assigns the same as error,' the assignment of error is fully sufficient to comply with the law and the rules of this court."  *O'Neal* v. *Miller,* 9 *Ga. App.* 180 (2) (70 S. E. 971).  The sustaining of the general demurrer and striking of the amended plea and answer had the inevitable result of allowing judgment to be entered up for the plaintiff in the amount sued for.  Error is assigned on the order sustaining the general demurrer and, under the authority of the cases above quoted, this is a sufficient assignment of error.  The motion to dismiss the bill of exceptions is overruled.

■ "Recoupment differs from a set-off in this: The former is confined to the contract on which plaintiff sues, while the latter includes all mutual debts and liabilities."  Code, § 20-1312.

"Recoupment lies for overpayments by defendant, or payments by fraud, accident or mistake." § 20-1313. "Recoupment may be pleaded in all actions ex contractu, where from any reason the plaintiff under the same contract is in good conscience liable to defendant. In all cases where recoupment may be pleaded, if the damages of the defendant shall exceed in amount those of the plaintiff, the defendant shall recover of the plaintiff the amount of such excess." § 20-1314.

Paragraph 4 of the defendant's plea is as follows: "The plaintiff represented, warranted and agreed with this defendant that he was the distributor and a representative of various hatcheries, whose names will be hereinafter set out and that all of the baby chickens were sold in sound, healthy and good condition and that he warranted the same to be sound, healthy and in good condition. As a further condition or warranty, the plaintiff agreed that if said baby chickens did not live or were found to be unsound within a period of fourteen days from the date of their delivery to the defendant, he would reimburse or replace the same to the defendant." The original suit was for the contract price of those chickens which died within the 14-day period nominated in the contract. The first three paragraphs of the amendment merely amplify and make clearer the allegations of the original answer. It seems to us that the plaintiff's action was one ex contractu and that the defendant's plea up to this point was unquestionably a good plea of recoupment under the same contract, the damages sought being only the cost (contract price) of the chickens which died within the 14-day period nominated in the contract. In the remaining paragraphs of the amendment the defendant seeks to recover, in addition to the cost of the chickens, the loss of the feed and medicine used in serving said baby chicks during the 14-day period of guaranty as nominated in the contract. Paragraph 8 of the amendment reads as follows: "Defendant says that the total loss above referred to was due solely, as the direct, immediate and proximate cause of the plaintiff's negligence, misrepresentation and fraud in telling, selling, and delivering to this defendant the said baby chicks which were not in sound and good condition at the time of the delivery of said chicks to this defendant, and the placement of the same to the various

growers as hereinbefore set out, and the plaintiff knew that said chicks were not in sound health and were diseased and would not live, and he made said statements falsely, fraudulently and with the intent to deceive, defraud and injure and damage this defendant, who was damaged as herein alleged."

Immediately following this paragraph the plea concludes with the following prayer: "Wherefore, this defendant prays that it have judgment against the plaintiff for the following items: Cost of the baby chicks, as referred to in its plea, answer and cross-bill—$1232.50. Loss for feed stuff and medicine in servicing said baby chicks during the fourteen-day period of their guaranty as made by the plaintiff—$3331.28. Total, $4563.78, and this amendment be allowed."

In view of the other allegations of the petition, it seems to us that paragraph (8) was saying that the defendant was seeking to recoup "for payments by fraud" (Code, § 20-1313) and was not due to any negligence on the part of the Alpharetta Feed and Poultry Company, for the plea said "the total loss above referred to was due *solely* as the direct, immediate and proximate cause of the plaintiff's negligence, misrepresentation and fraud in telling, selling and delivering to this defendant the said baby chicks which were not in sound and good condition at the time of the delivery of the chicks to this defendant and the placement of the same to the various growers as hereinbefore set out, and the plaintiff knew that the said chicks were not in sound health and were diseased and did not live and he made said statements falsely, fraudulently and with the intent to deceive, defraud and injure this plaintiff."

This paragraph, we think, was but stating the manner in which the contract of sale of the chickens was violated, and was not attempting to set off a tort against a contract. In *Mell v. Moony*, 30 *Ga.* 413, which was a suit on a note, the court stated that where on the sale of a quantity of standing wood the vendor agreed to indemnify the vendee against any damage that might happen to the wood in consequence of burning of the fallow, the vendee giving his note for the price, and after the fallow was burned and the wood in question thereby destroyed, the court held that in an action by a vendor on a note the vendee might recoup the damages arising from the loss of the wood.

The court then held (page 415): "We consider the doctrine well settled, that where a plaintiff sues on one part of a contract, consisting of mutual stipulations made at the same time and relating to the same subject-matter, the defendant may recoup his damages arising from the breach of that part which is in his favor; and this, whether the different parts are contained in one instrument or several; and though one part be in writing and the other in parol: Aliter, where the contract for the breach of which damages are claimed by defendant, is entirely distinct and independent of the one on which the plaintiff sues. Sedg. on Damages, top pages 449-452; 4 *Wendell*, 493-4; and *ib*, 116; 22 *ib*. 155; 9 *Howard* 225; 11 *ib*. 475; 19 *Ga. Rep.* 505; 3 *Hill* (N. Y.) *Rep.* 175."

In the instant case the pleadings show that the plaintiff sued on one part of the contract consisting of mutual stipulations made at the same time and relating to the same subject-matter, and that the defendant's plea was one of recoupment and was seeking to recoup his damages arising from the breach of that part of the contract which was in his favor. Applying to the pleadings in the instant case the provisions of Code § 20-1314 that, if the damages of the defendant shall exceed in amount those of the plaintiff, the defendant shall be entitled to the excess, we think the plea as amended set out a good cause of action and was not subject to any of the demurrers urged except as shown hereinafter, in division 3 of this opinion.

The plaintiff in error, in support of his contention that the answer should have been stricken because sounding in tort, cites *Maggioni* v. *Postal-Telegraph & Cable Co.*, 28 *Ga. App.* 51 (110 S. E. 309); *Collins* v. *Garrett*, 50 *Ga. App.* 203 (3) (177 S. E. 275); and *Tench* v. *Downey Hospital*, 36 *Ga. App.* 20 (135 S. E. 106). The principles of law stated therein are recognized, but they do not apply in this instance, since the counter-claims there were founded on a tort, or breach of legal duty, which was not in itself a part of the contract on which the plaintiff sued.

Further, those demurrers attacking the answer on the ground of inconsistency were without merit. "The defendant may file inconsistent and contradictory pleas." *Wheeler* v. *Salinger*, 33 *Ga. App.* 300 (125 S. E. 888); Code, § 81-310; *Pidcock* v. *Crouch & Son*, 7 *Ga. App.* 299 (66 S. E. 971); *Mendel* v. *Miller*, 134 *Ga.*

610 (2) (68 S. E. 430). One of the inconsistencies alleged is substantially that the defendant denominates his pleading, in the address, as "plea and answer, cross-bill, counter-claim, set-off and recoupment." It is well settled that misnomer of a pleading will not vitiate, since it is the function of the courts, rather than the pleader, to determine in the final analysis the sufficiency of the allegations contained therein, and such a defect would certainly be no cause for striking any defensive pleading which in fact set out a valid defense against the allegations of the petition. As stated in *Fontaine* v. *Baxley*, 90 *Ga.* 416, 427 (17 S. E. 1015): "Of what importance is it that a plea misnames a defense, if it clearly appears that the defense is good, or would be good if rightly named?" "It is not necessary to sustain the demurrer on account of the lack of literal precision in entitling the action." Bishop *v.* Weber, 139 Mass. 411 (1 N. E. 154). Nor is the plea and answer to be stricken as contradictory in that it pleads matter of contract and tort in the same count, for, as was pointed out above, the plea properly construed, sounds in contract. Because a plea and answer, which, as here, contains language which would be appropriate to a plea sounding in tort, was really, when considered as a whole, a plea sounding in contract, it will not be stricken as attempting to set off a tort against a contract. *Gray* v. *Joiner*, 127 *Ga.* 544 (56 S. E. 752); *Baldwin* v. *Davis*, 188 *Ga.* 587 (1e) (4 S. E. 2d, 458).

■ Paragraph 6 of the amendment to the plea reads as follows: "In addition thereto, this defendant says that it did incur and sustain a loss with the following growers in the amounts set opposite each: C. H. Spriggs, for medicine and feed, $203.05; Doc Cain, 55.00, etc. . . making a total of $3,331.27 for feed stuffs, medicine and the servicing of the growers of said chicks during the 14-day period after their placement by this defendant and during the period of the 14-day guarantee made by the plaintiff as to the livability and good condition of said chicks." These amounts were demurred to as vague and indefinite and "the plaintiff further says these amounts do not show what services were rendered or why said services, medicines or feed stuffs were necessary; nor do they show what connection they have with the alleged injury."

It is our understanding that, whenever the defendant seeks to allege, by way of recoupment, matter showing him entitled to a judgment over and against the plaintiff, the burden is upon him, in pleading such matter, to set out his damages with the same particularity as though he had brought suit in the first instance. In *Valdosta Drug Co.* v. *Mashburn Drug Co.*, 183 *Ga.* 471 (188 S. E. 694), the Supreme Court, reversing this court, held that where suit was brought on a note given as part of a contract of sale, the defendant might plead the breach of an independent covenant of the contract, where he did so purely by way of defense, and not with the idea of seeking affirmative relief, without setting out his damages with particularity, and stated: "The defense to the suit on the note was not confined to recoupment or set-off, under which pleas it would have been necessary to show the amount of damage." See, in this connection, *Smith* v. *Monroe*, 82 *Ga. App.* 118 (60 S. E. 2d, 790), and *Kahrs* v. *Kahrs*, 115 *Ga.* 288 (41 S. E. 649).

Nor do we think that the defendant, in giving the plaintiff a check in the full amount of the bill for the baby chicks, under the circumstances alleged, waived his right to insist upon a breach of warranty. The plea sets out that it was agreed at the time this check was issued that the plaintiff should repay the defendant for those chickens which died during the 14-day period, that he did not do so, and that, after trying for three days to reach an adjustment with him, the defendant stopped payment on the check, and that it was never in fact paid. *Lowery* v. *Rowland Co.*, 32 *Ga. App.* 109 (2) (122 S. E. 627), cited by the plaintiff, is distinguishable by the fact that in that case, as shown by the original record of that case on file in the office of the clerk of this court, the defendant paid the entire bill, knowing at the time of such payment that the plaintiff would not settle with him for the damages caused by the breach of warranty, although he had previously promised to do so. In the case at bar the plaintiff agreed *at the time he received the defendant's check* to make an adjustment; he failed to do so, and in consequence the defendant stopped payment on the check. Under these circumstances there was no waiver of the defendant's right to set up the breach of warranty.

As has been pointed out, the plea was not subject to general

demurrer, but paragraph 6 of the amendment was subject to special demurrer for indefiniteness. The proper judgment on a special demurrer going only to the meagerness of the allegations is not a judgment of dismissal, but a judgment requiring the pleader to amend and to make his plea upon the point attacked more certain in the particulars wherein he has been delinquent; and then if he refuses to amend, the plea may be dismissed, *if* the delinquency relates to the entire defense raised by the plea. Where, however, the plea is otherwise good without relation to the defective portion under attack, the proper judgment on special demurrer is a judgment requiring the defendant to amend his plea wherein he has been delinquent upon pain of having that portion of his plea stricken. *Dunn* v. *Western Union Telegraph Co.*, 2 *Ga. App.* 845, 853 (59 S. E. 189); *Moore* v. *Standard Accident Ins. Co.*, 48 *Ga. App.* 508, 514 (173 S. E. 48); *Willingham, Wright & Covington* v. *Glover*, 28 *Ga. App.* 394 (1) (111 S. E. 206); *Griffeth* v. *Wilmore*, 46 *Ga. App.* 96 (1) (166 S. E. 673). Therefore the judgment of the trial court is reversed for its error in sustaining the general demurrer to the plea as amended and in dismissing the plea and in entering judgment as by default, and it is ordered that within twenty days from the time the remittitur of this court is filed in the office of the clerk of the trial court, the defendant shall amend his plea as amended in the particulars pointed out, otherwise paragraph 6 of the amendment to the plea be stricken.

*Judgment reversed with direction. Gardner and Townsend, JJ., concur.*